# STATE OF MICHIGAN

# COURT OF APPEALS

VILLAGE OF EDMORE,

        Plaintiff/Counter-Defendant-
        Appellee,

v

CRYSTAL AUTOMATION SYSTEMS INC,

        Defendant/Counter-Plaintiff-
        Appellant.

UNPUBLISHED
October 19, 2017

No. 334135
Montcalm Circuit Court
LC No. 2016-021226-CK

Before: MURRAY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant, Crystal Automation Systems, Inc., a provider of phone and internet services to residents living in and around plaintiff, the Village of Edmore, a Michigan municipal corporation in Montcalm County, appeals as of right the trial court's Order for Entry of Default Judgment, Order Granting Plaintiff's Motion for Partial Summary Disposition, and Order Denying Defendant's Motion to Vacate and/or Set Aside Default and Granting Plaintiff's Motion for Entry of Default Judgment. Defendant contends that the trial court committed reversible error when it entered a default judgment against it, refused to set aside an improperly entered default, and granted plaintiff partial summary disposition based upon an incorrectly construed and interpreted Lease Agreement (Lease) between the parties. We agree, and reverse each of the trial court's orders and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

Since April 2003, defendant has rented space on and near plaintiff's water tower for its antennas and equipment. During 2015, plaintiff contracted with Utility Service Co., Inc. (USC) to repaint and maintain its water tower. USC told plaintiff that before it commenced the work all tenants of the water tower had to remove their equipment, so plaintiff ordered defendant to remove all of its equipment on and from around the water tower and threatened defendant that if it did not do so, plaintiff would charge defendant for doing so. Defendant objected to plaintiff's demand on the ground that the Lease did not permit plaintiff to order defendant to vacate the premises. Defendant also advised plaintiff that if plaintiff removed the equipment, local resident's phone, 911, and internet services would be interrupted in violation of the law. Shortly

-1-

after receiving defendant's objection, plaintiff informed defendant that it would delay the project until the spring of 2016.

During the interim period, defendant attempted to work out an alternative arrangement with plaintiff so that defendant could provide its customers with uninterrupted services while plaintiff repainted the water tower. Plaintiff's manager represented to defendant that it could erect a new tower on a different piece of property owned by plaintiff, but plaintiff ultimately decided it did not want to provide that option to defendant. Defendant also offered to move its equipment so that USC could work around it, but plaintiff refused that offer. Then, on March 3, 2016, plaintiff's counsel ordered defendant to remove its equipment from on and around the water tower by May 1, 2016. Plaintiff sued defendant on March 18, 2016, alleging breach of contract and seeking injunctive relief to force defendant to remove its equipment and to terminate the Lease.

The Lease signed by the parties granted defendant an initial five-year term with three additional automatically renewable five-year terms unless defendant notified plaintiff before the end of the initial term of its intent to not extend the Lease. The Lease also granted defendant the right to terminate the agreement upon 30 days' notice under specified instances, but did not give plaintiff the right to terminate. The Lease also contained the following provisions:

7.    Maintenance:

* * *

D. In the event the Landlord or any other Tenant undertakes painting, construction or other alterations on the premises, Tenant shall take reasonable measures as [sic] Tenant's cost to cover Tenant's equipment, personal property or antenna facilities and protect such from paint and debris fallout which may occur during painting, construction or alteration process.

* * *

10.    Interference: Tenant's installation, operation, and maintenance of its transmission facilities shall not damage or interfere in any way with the Landlord's water tower operations or related repair and maintenance activities or with such activities of other Tenants of the water tower. Landlord , at all times during this Lease, reserves the right to take any action it deems necessary, in its sole discretion, to repair, to maintain, alter or improve the premise in connection with the tower operations as may be necessary, including leasing parts of the water tower and surrounding ground space to others.

* * *

12.    Indemnity:

* * *

B.    Tenant's Indemnification:    Any and all liability, obligation, damages, penalties, claims, liens, costs, charges, losses and expenses (including, without limitation, reasonable fees and expenses of attorney's, expert witnesses and consultants), which may be imposed upon, incurred by or be asserted against the Landlord, its agents and employees, by reason of any act or omission of Tenant, its personnel, employees, agents, contractors or subcontractors, resulting in personal injury, bodily, injury, sickness, disease or death to any person or damage to, loss of or destruction of tangible or intangible property, copyright, patent, service mark or any other right of way [sic] person, firm, or corporation, which may arise out of or be in any way connected with the construction, installation, operation, maintenance, use or condition of the premises or Tenant's antenna facilities or the Tenant's failure to comply with any federal, state or local stature [sic], ordinance or regulation.

On March 22, 2016, plaintiff served its complaint on defendant along with an ex parte motion for preliminary injunction seeking an order that defendant vacate the water tower. Without delay, on March 23, 2016, defendant opposed plaintiff's motion by arguing that the Lease did not grant plaintiff the right to evict defendant from the water tower. Plaintiff filed a reply in which it requested that the trial court order defendant to remove its equipment by May 1, 2016, or allow plaintiff to do so at defendant's expense, and enter judgment against defendant.

The parties appeared the next day for a hearing, and a conference was held off the record where it was agreed that, rather than having the trial court hear and the decide the motion for injunctive relief, plaintiff would file a motion for partial summary disposition, defendant would respond, and the trial court would hear the motion, all on an expedited basis so that the hearing on the motion could happen on April 15, 2016. The trial court later entered an order on April 7, 2016, requiring plaintiff to file its motion by April 1 and defendant to respond by April 12. The order also stated that the parties could file their pleadings via e-mail with the original sent by first-class mail.

Consistent with the order, on April 1, 2016, plaintiff moved for partial summary disposition under MCR 2.116(C)(9) and (10). Plaintiff argued that because the Lease unambiguously required defendant to vacate the premises if in plaintiff's sole discretion it ordered defendant to do so for maintenance and repair of the water tower, defendant's refusal to vacate upon demand breached the Lease. In its response, defendant denied that plaintiff was entitled to force defendant to vacate its leasehold, and argued that plaintiff's conduct violated defendant's right to quiet enjoyment of the premises and effectively nullified the purpose of the Lease.

Late on the afternoon of April 14, 2016, defendant also filed its answer, affirmative defenses, and jury demand by e-mail and the original by first-class mail. That same afternoon, however, plaintiff filed a request for entry of default against defendant for failure to timely file its answer. The clerk entered the default and plaintiff served defendant the default by mail.

The very next day, at the hearing on plaintiff's motion for partial summary disposition, plaintiff's counsel announced that a default had been entered against defendant and that plaintiff's motion was essentially unopposed because, under MCR 2.603(A)(3), defendant was

-3-

precluded from responding to plaintiff's motion after the entry of the default. Defendant argued that it had opposed plaintiff's motion and requested that the trial court set aside the default. The trial court told defendant that it preferred having defendant file a motion to set aside the default, having the parties brief it, and having it heard on an expedited basis. The trial court then adopted the arguments made by plaintiff in its briefs and granted plaintiff summary disposition under MCR 2.116(C)(9) and (10).

On April 22, 2016, defendant moved to vacate or set aside the default, arguing in part that the default was improperly entered because it had defended the action vigorously from the start. Defendant asserted that plaintiff suffered no prejudice if the default was set aside and explained that good cause existed to set aside the default because defendant had a meritorious defense. According to defendant, the numerous factors articulated in *Shawl v Spence Bros, Inc*, 280 Mich App 213, 238-239; 760 NW2d 674 (2008), all weighed in favor of finding good cause to set aside the default. Further, defendant argued, under the terms of the Lease it was not liable to plaintiff. Defendant filed an affidavit of meritorious defense in which defendant's president denied that the Lease gave plaintiff the right to evict defendant from the water tower and denied that plaintiff could not terminate the Lease, but that it had nevertheless removed all of its equipment as previously ordered by the court.

On April 26, 2016, before responding to defendant's motion to set aside the default, plaintiff moved for entry of a default judgment. Plaintiff argued that a default judgment should be entered because (1) defendant was properly defaulted, and (2) defendant materially breached the Lease by refusing to vacate the water tower entitling it to terminate the Lease. Plaintiff contended that it was entitled to recover damages and attorney fees from defendant under the Lease.

Plaintiff subsequently opposed defendant's motion to set aside the default, arguing that defendant's failure to timely file its answer justified the clerk's entry of the default. Plaintiff contended that defendant did not "otherwise defend" the lawsuit because defendant had not filed its own motion. Good cause to set aside the default also did not exist because, according to plaintiff, no substantial defect or irregularity occurred, no excuse existed for defendant's tardy filing, and the totality of the circumstances favored defaulting defendant. Plaintiff also argued that defendant had no valid defense because the trial court had already granted plaintiff partial summary disposition.

In opposition to plaintiff's motion for default judgment, defendant argued that ¶ 12(B) of the Lease did not apply to the claims asserted because it specified defendant's obligation to indemnify plaintiff for claims made by third persons, but did not permit plaintiff to recover attorney fees in a dispute with defendant over the terms of the Lease. Defendant also argued that plaintiff had no right to terminate the Lease.

Three days later,[1] the trial court heard defendant's motion to set aside the default and plaintiff's motion for default judgment. The trial court considered the factors set forth in *Shawl* and found that all weighed against a finding of good cause. The trial court also held that defendant had no meritorious defense and, therefore, denied defendant's motion to set aside the default.

The trial court then adopted plaintiff's brief as its rationale for entry of a default judgment. Without explanation, the trial court found that defendant materially breached the Lease and, therefore, ruled that the Lease was terminated. The trial court also found that, under ¶ 12(B), the parties contemplated reasonable costs and attorney fees, and that costs and attorney fees would be assessed against defendant. The trial court later entered its order denying defendant's motion to set aside the default and granting plaintiff's motion for default judgment, which terminated the Lease effective May 1, 2016, and ordered defendant to pay plaintiff's reasonable attorney fees and damages it incurred in removing defendant's equipment from the water tower.

II. ANALYSIS

A. DEFAULT

We first turn to defendant's argument that the trial court erred by not setting aside the default because the default was improperly entered. We agree with defendant that it "otherwise defended" under MCR 2.603(A)(1) by defending against plaintiff's motions for injunctive relief and partial summary disposition, and as a result the trial court abused its discretion in not setting aside the default and default judgment.

Generally, this Court will not set aside a default that has been *properly* entered, *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999), in part because the abuse of discretion standard applies to review of the trial court's decision, *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 389; 808 NW2d 511 (2011).[2]

The trial court erred by not finding that good cause existed to set aside the default and default judgment because the default was not properly entered. Pursuant to MCR 2.603(D)(1), "[a] motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed." Thus, a default will not be set aside unless the defaulting party demonstrates both "good cause" and a "meritorious defense." *Barclay v Crown Bldg & Dev, Inc*, 241 Mich App 639, 653; 617 NW2d 373 (2000).

---

[1] Typically an unpublished opinion would not contain this much detail about the trial court proceedings, but we do so here because what each party did, and when it did it, is critical to a proper disposition of the appeal.

[2] In making its argument plaintiff cites to the prior, more deferential, abuse of discretion standard that no longer applies.

In *Shawl*, 280 Mich App at 238-239, this Court directed:

> In determining whether a party has shown good cause, the trial court should consider the following factors:

> (1) whether the party completely failed to respond or simply missed the deadline to file;

> (2) if the party simply missed the deadline to file, how long after the deadline the filing occurred;

> (3) the duration between entry of the default judgment and the filing of the motion to set aside the judgment;

> (4) whether there was defective process or notice;

> (5) the circumstances behind the failure to file or file timely;

> (6) whether the failure was knowing or intentional;

> (7) the size of the judgment and the amount of costs due under MCR 2.603(D)(4);

> (8) whether the default judgment results in an ongoing liability (as with paternity or child support); and

> (9) if an insurer is involved, whether internal policies of the company were followed.

> \* \* \*

> Neither of these lists is intended to be exhaustive or exclusive. Additionally, as with the factors provided in other contexts, the trial court should consider only relevant factors, and it is within the trial court's discretion to determine how much weight any single factor should receive.

We first conclude that although defendant "simply missed the deadline" to file its answer and affirmative defenses by two days, the default was nevertheless improperly entered because defendants "otherwise defended" this case from the start. Under MCR 2.603(A)(1), "[i]f a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend* as provided by these rules, and that fact is made to appear by affidavit or otherwise, the clerk must enter the default of that party." (Emphasis added.) This Court has made clear that the highlighted portion of MCR 2.603(A)(1) means that a party must not be defaulted if the party has otherwise defended the action by taking some defensive action in the case. In *Marposs Corp v Autocam Corp*, 183 Mich App 166, 168; 454 NW2d 194 (1990), the defendant filed motions for summary disposition and a change of venue. The trial court denied both motions. *Id*. The defendant sought leave to appeal the trial court's denial of its motion for a change of venue but not the denial of its motion for summary disposition. *Id*. The defendant did not file an answer

and was defaulted. *Id*. Although defendant should have timely filed a responsive pleading under MCR 2.108(A)(1), but had not done so, this Court held that the trial court erred by concluding that the defendant was properly defaulted because the defendant otherwise defended itself under MCR 2.603(A)(1). *Id*. at 170.

Here, from the start of this case, defendant defended itself by vigorously opposing plaintiff's motions for injunctive relief and partial summary disposition. Specifically, defendant (1) filed a brief opposing plaintiff's motion for injunctive relief with supporting affidavits, (2) appeared with counsel at the hearing on plaintiff's motion, (3) argued against the forced removal of its equipment because the Lease did not authorize plaintiff to demand that action from defendant, (4) defended against plaintiff's motion for summary disposition, and (5) appeared with counsel at the hearing on plaintiff's motion for summary disposition. There can be no doubt that defendant "otherwise defended" this lawsuit because each pleading it filed in this short time span contained defenses to plaintiff's claims and requests for relief. Compare *Marposs Corp*, 183 Mich App at 168-170, with *Huntington Nat'l Bank*, 292 Mich App at 388; 808 NW2d 511 (2011). Consequently, good cause existed to set aside the default and default judgment because the default was improperly entered, and the trial court erred in ruling otherwise.

Though the foregoing conclusion is enough to move on to the meritorious defense issue, we still point out that the record establishes that the *Sprawl* factors warranted a finding of good cause. Factors one through three weighed in favor of finding good cause. Although defendant missed the April 12, 2016 deadline for filing its answer, defendant filed its answer and affirmative defenses via e-mail and mailed the originals to the trial court two days late. Further, the court clerk entered the mailed copy as filed on April 18, 2016, just six days after the deadline. Defendant did not completely fail to defend the action, nor did defendant fail to file an answer. Moreover, defendant vigorously defended against plaintiff's claims from the commencement of the case. Therefore, the trial court incorrectly concluded that defendant completely failed to answer or take any action, and wrongly ruled that factors one and two weighed against finding good cause, when clearly both factors weighed in defendant's favor.

Respecting factor three, on April 15, 2016, when defendant learned that a default was entered late afternoon on April 14, 2016, defense counsel moved in open court to have the default set aside. The trial court refused to take immediate action and instead required defendant to file a motion to set aside the default. Defendant promptly filed its motion to set aside the default on April 22, 2016, only eight days after entry of the default. The trial court should have found that the short duration between entry of the default and defendant's action favored finding good cause for setting aside the default because, contrary to the trial court's conclusion, defendant actually took prompt action to get the default set aside.

Factor five weighed against finding good cause because defendant missed the deadline to file its answer. Defense counsel failed to properly calendar the deadline and filed the answer late. Such negligence was not excusable. Nevertheless, the record reflects that defense counsel's failure to timely file defendant's answer was not intentional. Therefore, factor six weighed in favor of finding good cause. The trial court incorrectly concluded that factor six absolutely weighed against finding good cause.

Factor seven also weighed in favor of finding good cause. The trial court focused only on the monetary amount of a potential judgment and held that the minimal amount of damages at stake required finding that factor seven weighed against good cause. The trial court, however, completely disregarded the fact that the judgment sought by plaintiff included eviction of defendant and termination of the Lease. The severity of the potential judgment's impact on defendant should have been considered. When considered, factor seven weighs in favor of finding good cause. The trial court's analysis of factor seven was critically flawed.

Factor eight also weighed in favor of finding good cause because nothing in the record establishes that there was a risk of ongoing liability in this case. There was no potential for ongoing liability like that of a paternity or child support case. The trial court, therefore, erroneously ruled this factor weighed against finding good cause.

Again, for all these reasons, we conclude that the trial court erred by holding that good cause did not exist.

In addition to good cause, defendant was required to establish a meritorious defense to warrant setting aside a default. MCR 2.603(D)(1). Under *Shawl*, 280 Mich App at 238, the trial court was required to consider whether the affidavit of meritorious defense contained evidence that:

> (1) the plaintiff cannot prove or defendant can disprove an element of the claim or a statutory requirement;

> (2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7) or (8); or

> (3) the plaintiff's claim rests on evidence that is inadmissible.

The trial court held that defendant failed to establish a meritorious defense on the basis that defendant had no defense under the Lease to plaintiff's claims. Because the trial court incorrectly construed and interpreted the Lease terms, it incorrectly held that defendant had no defense and refused to set aside the default. As explained below, the Lease, when properly construed and interpreted, provided defendant a defense because the Lease did not grant plaintiff the right to order defendant to remove its equipment, and if defendant refused, terminate the Lease. The trial court's original error (explained more below) granting plaintiff's motion for partial summary disposition led to its conclusion that defendant lacked any defense. Accordingly, the trial court's ruling resulted in an outcome that fell outside the range of principled outcomes. *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007).

Therefore, we hold that the trial court abused its discretion by refusing to set aside the default because defendant established good cause for setting aside the default, and defendant had a meritorious defense to plaintiff's claims.

## B. SUMMARY DISPOSITION

We next turn our attention to defendant's argument that the trial court erred by granting plaintiff summary disposition under MCR 2.116(C)(9) and (10). Summary disposition under

MCR 2.116(C)(9) may be granted only if the defendant failed to plead a valid defense to a claim. *Village of Dimondale v Grable*, 240 Mich App 553, 564; 618 NW2d 23 (2000).

> A motion under MCR 2.116(C)(9) tests the sufficiency of a defendant's pleadings by accepting all well-pleaded allegations as true. If the defenses are so clearly untenable as a matter of law that no factual development could possibly deny plaintiff's right to recovery, then summary disposition under this rule is proper. [*Id*. (citations and quotation marks omitted).]

The trial court "may look only to the parties' pleadings in deciding a motion under MCR 2.116(C)(9). MCR 2.116(G)(5)." *Id*. at 565. Under MCR 2.110(A), "pleadings" "include only a complaint, a cross-claim, a counterclaim, a third-party complaint, an answer to any of these, and a reply to an answer. A motion for summary disposition is not a responsive pleading under MCR 2.110(A)." *Id*. (citations omitted).

A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim, and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). This Court considers only the evidence that was properly presented to the trial court in deciding the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003).

As a general rule, summary disposition is premature if granted before discovery is complete on a disputed issue. *Dimondale*, 240 Mich App at 566. "However, summary disposition may be proper before discovery is complete where further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion." *Id*. (citation and quotation marks omitted).

The resolution of this appeal involves the construction and interpretation of the terms of the Lease. "The primary goal in interpreting contracts is to determine and enforce the parties' intent." *Old Kent Bank v Sobczak*, 243 Mich App 57, 63; 620 NW2d 663 (2000). "To do so, this Court reads the agreement as a whole and attempts to apply the plain language of the contract itself." *Id*. The language of the contract is to be given its ordinary, plain meaning; technical, constrained constructions should be avoided. *Bianchi v Auto Club of Mich*, 437 Mich 65, 71 n 1; 467 NW2d 17 (1991). The construction of the terms of a contract is generally a question of law for the court; however, where a contract's meaning is ambiguous, the question of interpretation should be submitted to the fact-finder. *D'Avanzo v Wise & Marsac, PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997). A contract is ambiguous when its words can reasonably be understood in different ways. *Id*. Inartfully worded or clumsily arranged contract terms do not render a contract ambiguous if it fairly admits of one interpretation. *Mich Twp Participating Plan v Pavolich*, 232 Mich App 378, 382; 591 NW2d 325 (1998).

If the language of the Lease was unambiguous, the trial court was required to enforce it as written, *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008), as courts may not substitute their judgment for the intent of the parties and remake the contract into something the parties never intended, *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 199-200; 702 NW2d 106 (2005). Parties are free to contract as they see fit, and courts must enforce contracts unless they are in violation of law or public policy. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003).

Contracts must be construed as a whole, giving effect to all provisions. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). Courts must avoid interpretations that would render any part of a contract surplusage or nugatory, and must also, if possible, seek an interpretation that harmonizes potentially conflicting terms. *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership*, 295 Mich App 99, 111; 812 NW2d 799 (2011), rem'd on other grounds by 493 Mich 859 (2012). Further, where a contract contains specific and general terms, the specific terms control over the general terms. *Royal Prop Group, LLC*, 267 Mich App at 719.

Here, paragraph 2 of the Lease granted defendant space on plaintiff's water tower and near the water tower's base for an initial five-year lease term with three additional automatically renewable five-year terms unless defendant notified plaintiff before the end of the initial term of its intent to not extend the Lease. Paragraph 19 of the Lease granted defendant the right to terminate the agreement upon 30 days' notice under specified instances. The Lease did not grant plaintiff the right to terminate, nor did it expressly state that plaintiff could order defendant to remove its equipment from the premises.

Paragraph 7(D) of the Lease specifically addressed what was required of defendant if plaintiff decided to paint the water tower. Specifically, that paragraph provides that when plaintiff undertook to paint the water tower defendant had to take "reasonable measures" at its cost to protect its equipment from harm. It does not state that plaintiff could request or order defendant to vacate the premises. However, the terms stated in ¶ 10 intersect with ¶ 7(D). Pursuant to ¶ 10, defendant could not interfere with plaintiff's operation, repair, or maintenance of the water tower and provided plaintiff the right to take action it deemed necessary in its sole discretion to repair, maintain, alter, or improve the water tower.

However, paragraphs 2, 7(D), 10, and 19, must be read together. And, when properly read together, we hold that there was no contractual language where the parties agreed that plaintiff could order defendant to completely remove its equipment and terminate the Lease when plaintiff deemed painting or maintenance necessary. Rather, a procedure was implemented by the parties within ¶ 7(D) in the event plaintiff needed to paint the water tower. Plaintiff unilaterally determined that that procedure would not suffice, so instead ordered defendant to remove its property. When defendant opposed this remedy, the trial court ordered the material removed and terminated the Lease.

However, construing and interpreting the Lease to provide plaintiff the unfettered right to order defendant to remove all of its equipment and cease its use of the water tower is inconsistent with ¶ 19, which gives defendant – not plaintiff – the ability to end the Lease early, as well as with the very purpose of the Lease—defendant's right to uninterrupted use of the water tower for

defendant's business in return for its payment of the rent. The trial court's decision deprived defendant of its benefit of the bargain, and created a remedy that did not exist under the Lease. *United Coin Meter Co v Lasala*, 98 Mich App 238, 242; 296 NW2d 221 (1980).

The trial court's orders are reversed, and this matter is remanded for further proceedings consistent with this opinion.

This Court does not retain jurisdiction.

Defendant may tax costs, having prevailed in full. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Jane E. Markey