*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ESTATE OF DELTON ARLEN OMEY, SR.

---

DELTON ARLEN OMEY, JR., Personal
Representative of the ESTATE OF DELTON
ARLEN OMEY, SR.,

　　　　　　Appellant,

v

LORI K. OMEY,

　　　　　　Appellee.

UNPUBLISHED
February 28, 2019

No.　341844
Lenawee Probate Court
LC No.　17-050027-DE

---

Before:　TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Appellant, Delton Arlen Omey, Jr., as the personal representative of the estate of his father, Delton Arlen Omey, Sr. (the decedent), appeals as of right the order granting summary disposition in favor of appellee, Lori Omey, in this probate action. We reverse and remand.

## I. BACKGROUND FACTS

On February 8, 2006, appellee and the decedent entered into a prenuptial agreement. Of particular relevance for the issue on appeal, ¶ 3A(1)(e) provides:

Husband's Separate Property [upon divorce or his death] shall include the real property . . . described and listed on ***Exhibit A***, whether the title of such real estate . . . remains solely in the name of the Husband or whether it is subsequently [to the execution of the prenuptial agreement is] owned by Husband and Wife as tenants by the entireties or as joint tenants with the right of survivorship.

And ¶ 3H states:

> Notwithstanding anything to the contrary herein, with respect to the real property owned by Husband . . . , all which [is] described and listed on **Exhibit A**, in the event the Parties, subsequent to this Agreement own the real property . . . as Husband and Wife, whether as tenants by the entireties or as joint tenants with the right of survivorship, . . . in the event of death or divorce, such real property shall be treated as Husband's Separate Property, as if title in the real estate was solely in the name of Husband, and shall be treated as Husband's Separate Property in accordance with the terms of Section 3(A) through (G), above, in complete disregard in the method of ownership of the real property.

Further, ¶ 15 provides:

> **No limitation on Inter Vivos Transfers.** Nothing in this Agreement shall affect or diminish the right of either Party voluntarily to transfer real or personal property to the other Party, or the right to receive property so transferred by the other Party, during the lifetime of the Parties. Any such transfer, to be effective, must make reference to this Agreement and be acknowledged by both Parties in writing that the transfer is a voluntary transfer in which the provisions of this Agreement as to Separate Property has [sic] no force and effect and that the intent of the Parties is to hold the property as tenants by the entireties or solely by the grantee.

In April 2006, after appellee and the decedent married, the decedent executed a quit claim deed of the real estate at issue and conveyed the property to both himself and appellee as tenants by the entireties. Notably, the deed did not contain an acknowledgement, as contemplated in ¶ 15 of the prenuptial agreement, that the transfer was to be exempt from the various "separate property" provisions of the agreement.

After the decedent died in December 2016, appellee moved for summary disposition and contended that the property was hers and hers alone due the tenancy by the entireties she and the decedent had in the property. Appellant, however, argued that the prenuptial agreement made it clear that because the deed that purported to create the tenancy by the entireties did not contain the acknowledgement language of ¶ 15 of the agreement, the property was required to be treated as the decedent's separate property—and therefore its disposition after the decedent's death was subject to his will. The trial court agreed with appellee and granted summary disposition in her favor.

In its written opinion, the trial court framed the issue as whether the deeding of the property as a tenancy by the entireties "superseded" the prenuptial agreement. The court ruled that "[t]itle to the land prevails" and that once the deed was signed, the property became the undivided whole interest for both the decedent and appellee and became appellee's property upon the decedent's death. Consequently, the court concluded that the prenuptial agreement did not have "any impact on the property rights of [appellee] in this case."

-2-

## II. ANALYSIS

Appellant argues that the trial court erred by concluding that the quitclaim deed, which was signed after the execution of the prenuptial agreement, controlled over the prenuptial agreement. Specifically, appellant contends that the trial court erred by merely analyzing the deed under property law and overlooking the contractual obligations of the parties. We agree.

"We review de novo a trial court's grant or denial or summary disposition." *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). As recognized by this Court:

> A motion for summary disposition based on MCR 2.116(C)(10) tests the factual support for a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence. The moving party must specifically identify the undisputed factual issues and support its position with evidence. The trial court must consider the submitted evidence in the light most favorable to the nonmoving party, but may not make findings of fact or weigh credibility in deciding the motion. If the moving party fulfills its initial burden, the party opposing the motion then must demonstrate with supporting evidence that a genuine and material issue of disputed fact exists. In the absence of any genuine issue of material fact, summary disposition may be granted to the party entitled to it as a matter of law. [*Id.* at 140-141 (citations omitted).]

A prenuptial agreement, also known as an antenuptial agreement, is a contract that prospective spouses may enter before marriage. *Rinvelt v Rinvelt*, 190 Mich App 372, 378; 475 NW2d 478 (1991). "It is now generally recognized that antenuptial agreements which relate to the parties' rights upon the death of one of the parties are favored by public policy." *In re Estate of Benker*, 416 Mich 681, 688; 331 NW2d 193 (1982). "Antenuptial agreements are subject to the rules of construction applicable to contracts in general." *Reed*, 265 Mich App at 144 (quotation marks and citation omitted). Thus, antenuptial agreements "are matters of agreement by the parties, and the function of the court is to determine what the agreement is and enforce it." *Id.* (quotation marks and citation omitted); see also *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130; 743 NW2d 585 (2007). As such, we are to interpret contracts according to their plain, unambiguous terms. *Rory v Continental Ins Co*, 473 Mich 457, 483; 703 NW2d 23 (2005). "Also, courts must 'read contracts as a whole, giving harmonious effect, if possible, to each word and phrase.' " *Detroit Pub Schs v Conn*, 308 Mich App 234, 252; 863 NW2d 373 (2014) (citation omitted); see also *Village of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 263; 911 NW2d 241 (2017) (stating that courts are to "seek an interpretation that harmonizes potentially conflicting terms").

Here, the decedent and appellee agreed to the terms of the prenuptial agreement, and no party challenges the validity of that agreement. Paragraphs 3A(1)(e) and 3H of the agreement clearly provide that the real estate at issue was the decedent's separate property before the marriage and that even if later conveyed to appellee, including as a tenancy by the entireties, it was nevertheless to be considered his separate property upon his death. However, the parties were not irrevocably locked into such an arrangement because the agreement provided a way for the parties to bypass these "separate property" provisions. Specifically, ¶ 15 of the agreement provides that the parties could avoid the separate property provisions if the deed conveying the property to appellee included a statement that the separate property provisions of the prenuptial

agreement were to have "no force and effect," as to that conveyance, and if such a provision were acknowledged by both the decedent and appellee in the manner required by the prenuptial agreement. It is undisputed that the quitclaim deed at issue contained no such language.

While we agree with the general view of the trial court that property law and title to land are among "the highest and oldest concepts of law," we note that, to the extent provenance of the law matters, contract law is equally venerable. See, e.g., *Rogers v Odell*, 36 Mich 411, 415 (1877) (providing that courts will not refuse to enforce a written contract, unless "very strong equities" exist); *Hadley v Baxendale*, 156 Eng Rep 145; 9 Exch 341 (1854) (enforcing a contract but limiting the scope of damages); Harrell, *The Importance of Contract Law: A Historical Perspective*, 41 Okla City U L Rev 1, 1 (2016) ("It has been said that contract law is the most important contribution to jurisprudence made by the English common law."); Thorne, *History & Sources of the Common Law: Tort & Contract by C H S Fifoot*, 59 Yale LJ 1197, 1198 ("One may say that by 1550 'the modern conception of a contract had in essence been formulated' . . . ."). The trial court, in ruling that "[t]itle to land prevails," relied on chapter 557 of the MCL, which covers property of husband and wife. However, within that chapter, MCL 557.28 states that "[a] contract relating to property made between persons in contemplation of marriage shall remain in full force after marriage takes place." Further, our Supreme Court has stated that unambiguous contractual provisions are to be enforced, unless the provision would violate law or public policy. *Rory*, 473 Mich at 461. Neither the trial court nor any party suggested the agreement violates any law or public policy, and we do not find any such violation. Therefore, the unambiguous terms of the prenuptial agreement are to be enforced.

Further, there is no conflict between the prenuptial agreement and the deed; both can be given full effect. The deed, as it sought to accomplish, did create a tenancy by the entireties between the decedent and appellee.[1] Hence, after the decedent's death, appellee became the sole owner of the property by operation of law. See *Walters v Leech*, 279 Mich App 707, 711; 761

---

[1] Although ¶ 15 states that "[a]ny such transfer, *to be effective*, must make reference to this Agreement and be acknowledged by both Parties in writing that . . . the provisions of this Agreement as to Separate Property has no force and effect" (emphasis added), we do not read the "to be effective" portion as somehow voiding a deed that does not contain the acknowledging language. Instead, when read with the remainder of the agreement, see *Detroit Pub Schs*, 308 Mich App at 251-252, it is clear that in order for the conveyance *to avoid the separate property provisions*, it needs to specifically acknowledge that it is doing so. But, notably, the failure to use the acknowledging language does not void the deed. For example, other places in the agreement clearly contemplate the decedent's real estate being held as a tenancy by the entireties but nevertheless counting toward the decedent's separate property. See ¶¶ 3A(1)(e) and 3H. The only way to harmonize these various provisions is to read the agreement as not voiding any attempt to transfer the real property to appellee. See *Village of Edmore*, 322 Mich App at 263. However, while that transfer would be valid, in order to avoid the property being considered as part of the decedent's separate property upon his death, the deed was required to have been accompanied by written acknowledgements of the decedent and appellee that the separate property provisions of the agreement were to have no effect.

NW2d 143 (2008) (stating that property that is held as tenants by the entireties becomes the sole property of the surviving spouse). However, in giving effect to the prenuptial agreement upon the decedent's death, there being no written acknowledgment repudiating the separate property provisions of the agreement, the property must be considered part of the decedent's separate property, regardless of how it had been titled. Thus, although the deed transferring the property to appellee and the decedent was valid and effective, appellee essentially agreed that under these circumstances she would give the property back to the decedent's estate. Appellee expressly agreed to this outcome, and we see no basis for not holding her to her freely negotiated contractual agreement. See *Harbor Park Market*, 277 Mich App at 131 ("[T]he parties must live by the words of their agreement.").

We therefore reverse the grant of appellee's motion for summary disposition and remand for proceedings consistent with this opinion. We do not retain jurisdiction. Appellant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

-5-