*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLEN & ALLEN PROPERTIES LLC and
CURTIS SMITH,

UNPUBLISHED
August 22, 2024

        Plaintiffs-Appellants,

v

No. 365970
Wayne Circuit Court
LC No. 20-016562-CB

JASON SMITH,

        Defendant-Appellee.

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

In this contract dispute between brothers over membership in a limited liability company (LLC), plaintiffs Allen & Allen Properties, LLC and Curtis Smith appeal as of right the trial court's order granting summary disposition to defendant Jason Smith, and directing the parties to arbitrate their dispute pursuant to the arbitration clause in the LLC's Operating Agreement. Plaintiffs argue that the trial court erred in concluding that the Operating Agreement allowed for Jason's admission as a member of the LLC without unanimous consent of the LLC's original members, and in rejecting their jury demand. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case is now before this Court for a second time. In this Court's prior opinion, the panel stated the factual and procedural history as follows:

> In 2004, Curtis and Howard Smith [Curtis and Jason's father] formed Allen & Allen Properties, LLC. Howard contributed $710,216, resulting in a 90% ownership of the [LLC], while Curtis contributed $41,560, resulting in 10% ownership. On January 1, 2010, Curtis and Howard signed an Operating Agreement to govern the [LLC]'s affairs. Section 8.12 of the Operating Agreement contained an arbitration clause, which provides, in relevant part, "Any disputes arising out of or pertaining to the interpretation of this Agreement shall be submitted to an arbitrator upon the request by any of the Members." The Operating Agreement also contained the following pertinent clauses related to new members:

-1-

* * *

> 5.1 **New Members; Substitute Members and Transferees.** New Members may be admitted to the Company without the prior written consent of all Members. Unless otherwise required by law, no Member has the right to sell, assign, transfer, mortgage, or pledge his Interest, or any part of his Interest, in this Company or grant the right to become a substitute member to an assignee of all or any part of his interest, except with the prior written consent of all Members, and any attempt to do so is null and void.

The Operating Agreement was allegedly amended in 2014 as a result of a handwritten memorandum signed only by Howard, which reduced Howard's ownership to 50%, increased Curtis's share to 25%, and gave [Jason] a 25% ownership interest. Curtis did not sign the amendment, and he claims he was not aware of the amendment until after Howard died in August 2020. Thereafter, [Jason] submitted a letter to plaintiffs claiming an ownership in the [LLC], and stating his intent to begin termination of the [LLC] and liquidation of its assets.

Plaintiffs filed a complaint for declaratory judgment, which he subsequently amended, requesting the trial court to find that: (1) defendant did not have an interest in the [LLC]; (2) Curtis, as the sole remaining member of the [LLC], is now the only owner of 100% of the [LLC]; and (3) an award of costs, interest, and attorney fees in favor of plaintiffs. [Jason] moved for summary disposition under MCR 2.116(C)(7), arguing that the dispute was subject to arbitration under the Operating Agreement because he was a member of the [LLC] as evidenced by the 2014 amendment. Plaintiffs responded, contending arbitration was inappropriate because [Jason] was not a party to the Operating Agreement and was not unanimously approved as a new member, and, therefore, not a member of the [LLC] with rights under the Operating Agreement.

In an attached affidavit, Curtis explained that the correct language of section 5.1 of the Operating Agreement should state: "No new Members may be admitted to the company without the prior consent of all Members." However, the copy submitted by [Jason] omitted the word "No" in the first statement sentence of section 5.1. Curtis argued that this was either a typographical error or the result of altering the sentence. Subsequently, plaintiffs argued that the error in section 5.1 was actually an intentional and fraudulent alteration of the Operating Agreement.

The trial court found there was a question regarding whether [Jason] was a legitimate party to the Operating Agreement. However, the court granted defendant's motion and stated that the remaining questions should be decided in arbitration concluding, "The question of membership . . . is simply a question for the arbitrator." [*Allen & Allen Props, LLC v Smith*, unpublished per curiam opinion of the Court of Appeals, issued July 28, 2022 (Docket No. 358047), p 1-3.]

This Court found error in the trial court's conclusion that the issue of Jason's membership in the LLC should be decided by the arbitrator and remanded to the trial court, stating:

> Because there exists a factual dispute bearing on the validity of the arbitration agreement, we remand to the trial court to hold an evidentiary hearing. Although the validity of the arbitration clause itself is not in question in the instant case, multiple questions arise as to whether [Jason] is a proper party to the Operating Agreement, and, thus, whether [Jason] can enforce the arbitration clause in the instant dispute. [*Id*. at 5 (citation omitted).]

On remand, Jason filed a second motion for summary disposition under MCR 2.116(C)(7), reiterating the arguments made in his first motion, including that Howard and Curtis's conduct proved they modified the Operating Agreement because tax documents, of which Curtis was or should have been aware, reflected the LLC's ownership change. Plaintiffs then filed a jury demand and responded to the summary disposition motion, also reiterating the arguments made in their prior response, and asserting that any ambiguities in the Operating Agreement should be resolved by a jury.

The trial court ordered that an evidentiary hearing be held in accordance with this Court's remand directive, but Jason subsequently filed a motion asserting that the parties disagreed as to whether the hearing should be before a jury. Plaintiffs argued a jury trial, rather than an evidentiary hearing, would be appropriate, stating, "The issue to be decided in this case *is not* whether the [Operating Agreement] contains an arbitration clause (or whether it is enforceable), but rather whether the parties to the [Operating Agreement] (Howard Smith and Curtis Smith) intended that new members could be added by one member without the consent of the other."

After further briefing, the trial court ordered and set an evidentiary hearing. The parties also filed briefs ahead of the evidentiary hearing, which the court held on April 6, 2023. The parties submitted exhibits which the court considered along with testimony from Curtis, Jason, and Lisa Breneman, Jason's half sister and Curtis's stepsister.

Ultimately, the trial court made findings and a ruling on the record, and issued an opinion and order granting Jason's motion for summary disposition under MCR 2.116(C)(7) and directing the parties' dispute to arbitration. In so doing, the court recognized the ambiguities in the Operating Agreement but concluded Jason was a legitimate member of the LLC.

## II. STANDARDS OF REVIEW

> We review de novo a trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(7). *Hicks v EPI Printers, Inc*, 267 Mich App 79, 84; 702 NW2d 883 (2005). A motion under MCR 2.116(C)(7) is appropriately granted when a claim is barred by an agreement to arbitrate. *Maiden v Rozwood*, 461 Mich 109, 118 n 3; 597 NW2d 817 (1999). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Id*. at 119. [*Galea v FCA US LLC*, 323 Mich App 360, 368; 917 NW2d 694 (2018).]

"The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators." *City of Ferndale v Florence Cement Co*, 269 Mich App 452, 458; 712 NW2d 522 (2006). Thus, whether a particular issue is subject to arbitration is reviewed de novo. *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016).

Finally, "[t]his Court reviews de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous." *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). However, determining the meaning of an ambiguous contract is a question of fact, *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 474; 986 NW2d 427 (2022), and a trial court's factual findings are reviewed for clear error, *Hein*, 337 Mich App at 115-116. Factual findings are clearly erroneous where "there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

## III. JURY TRIAL

We first address plaintiffs' argument that because this is not a case where the court had to decide whether an arbitration agreement exists or is enforceable, the issue of whether Jason was properly made a new member of the LLC pursuant to the Operating Agreement should have been decided by a jury.

Plaintiffs are correct that no dispute exists regarding the validity of the Operating Agreement's Arbitration Clause itself. This Court acknowledged that fact in its prior opinion, stating:

> In the instant case, it is undisputed that the Operating Agreement contains an arbitration clause. However, because [Jason]'s membership in the LLC is in doubt, as admitted by the trial court, the enforceability of the arbitration clause as to the parties of this dispute is still in question. [*Allen & Allen Props, LLC*, unpub op at 4.]

Nevertheless, as this Court stated, both the existence of an arbitration clause within a contract and the *enforceability* of its terms are judicial questions. *In re Nestorovski Estate*, 283 Mich App 177, 197; 769 NW2d 720 (2009). Here, enforceability of the Operating Agreement's arbitration clause against Jason depends upon whether Jason was appropriately made a member of the LLC under the Operating Agreement and, thus, a party to the Agreement. See *AFSCME Council 25 v Wayne Co*, 292 Mich App 68, 80; 811 NW2d 4 (2011) ("Arbitration, which is a matter of contract, cannot be imposed on a party that was not legally or factually a party to the agreement wherein an arbitration provision is contained."). Accordingly, those issues were properly before the trial court. See MCR 3.602(B)(2) ("On motion of a party showing an agreement to arbitrate and the opposing party's refusal to arbitrate, the court may order the parties to proceed with arbitration and to take other steps necessary to carry out the arbitration agreement. If the opposing party denies the existence of an agreement to arbitrate, the court shall summarily determine the issues and may order arbitration or deny the motion.").

IV. MEMBERSHIP IN THE LLC

Plaintiffs break their next argument into several issues, but essentially assert that the trial court misinterpreted the Operating Agreement and erred in concluding Jason was properly made a member of the LLC in accordance with its terms.

> "The primary goal in interpreting contracts is to determine and enforce the parties' intent." *Old Kent Bank v Sobczak*, 243 Mich App 57, 63; 620 NW2d 663 (2000). "To do so, this Court reads the agreement as a whole and attempts to apply the plain language of the contract itself." *Id*. The language of a contract is to be given its ordinary, plain meaning; technical, constrained constructions should be avoided. *Bianchi v Auto Club of Mich*, 437 Mich 65, 71 n 1; 467 NW2d 17 (1991). [*Village of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 262; 911 NW2d 241 (2017).]

"A contract is ambiguous when its words can reasonably be understood in different ways." *Id*.

Plaintiffs argue Section 5.1 of the Operating Agreement contains a typographical error. Specifically, they assert that the first sentence should begin with the word "No," which would have made it harmonious with the rest of section 5.1 and the Operating Agreement as a whole. In support, plaintiffs cite Curtis's testimony regarding the intent of the parties at the time they signed the Operating Agreement, the otherwise conflicting language with the remainder of Section 5.1, and operating agreements Howard used for other companies.

Again, Section 5.1 begins by stating that "New Members may be admitted to the Company without the prior written consent of all Members," but continues:

> Unless otherwise required by law, no Member has the right to sell, assign, transfer, mortgage, or pledge his interest, or any part of his interest, in this Company or grant the right to become a substitute member to an assignee of all or any part of his interest, except with the prior written consent of all Members, and any attempt to do so is null and void. Subject to the other provisions of this Agreement, a transferee of an interest in the Company shall be admitted as a member only after completion of the following:
>
> (a) The transferee accepts and agrees in writing to be bound by the terms and provisions of this Agreement;
>
> (b) The transferee pays of [sic] reimburses the Company for all legal fees and filing costs incurred by the Company in connection with the admission of the transferee as a member; and
>
> (c) If the transferee is not an individual, the transferee provides the Company with evidence satisfactory to counsel for the Company of the authority of such transferee to become a member under the terms and provisions of this Agreement.

Thus, had the first sentence begun with the word "No," it would have been consistent with the remainder of 5.1, which requires specific actions be taken to add a new member to the LLC.

Such a reading would also be consistent with Curtis's testimony that he and Howard did not discuss adding Jason to the LLC prior to Howard's death, and Jason's testimony that he never accepted the membership in writing or put cash into the LLC, as well as some other sections of the Operating Agreement.

For example, Section 7.2 states:

**Permitted Dispositions**.  Subject to the provisions of this Article, a Member may assign such Member's membership interest in the Company in whole or in part. The assignment of a membership interest does not itself entitle the assignee to participate in the management and affairs of the Company, *or to become a Member*. Such assignee is only entitled to receive, to the extent assigned, the distributions the assigning Member would otherwise be entitled to.  (Emphasis added).

And Section 8.8 provides:

**Amendment of Agreement and Articles of Organization**.  Neither this Agreement, nor the Articles of Organization, a form of which is attached to this Agreement as Exhibit B, may be amended or modified, except with the unanimous written consent of all Members.

Further, other operating agreements used by Howard and produced by plaintiffs state, in the first sentence of their own Section 5.1, "*No* new members may be admitted to the Company without the prior written consent of all Members." (Emphasis added.)  The first was for a company called T&H Development, LLC and was signed by Howard Smith and Anthony Lumia.  The second was for a company called Charter Oaks Development LLC, and was signed by Howard Smith and Carl Giordano.  The third was unsigned but was for a company called Green-Tech Building Co, LLC.

As Jason points out, however, other provisions of Allen & Allen's Operating Agreement and the operating agreements just discussed contain provisions which undermine plaintiffs' argument that Section 5.1 contains a typographical error or mistake.  Section 7.3 of the Operating Agreement appears consistent with the first sentence of Section 5.1, stating:

**Admission of Substitute Members**.  An assignee of a member's interest shall be admitted as a substitute Member and entitled to all the rights and powers of the assignor, and is subject to all the restrictions and liabilities of a Member.

While Section 7.2 says assignees of interest are not entitled to membership, Section 7.3 specifically requires membership for an assignee of interest, and does not, at least explicitly, mandate the consent of all members, consistent with the first sentence of Section 5.1.

In contrast, Section 7.3 in the operating agreements for T&H, Charter Oaks, and Green-Tech explicitly required unanimous consent, consistent with the way Section 5.1 is written in those agreements, stating:

**Admission of Substitute Members**.  An assignee of a membership interest shall be admitted as a substitute Member and entitled to all the rights and powers of the

assignor only if the other Members unanimously consent. If admitted, the substitute Member, has to the extent assigned, all of the rights and powers, and is subject to all of the restrictions and liabilities of a Member.

From the above, and reading the contract as a whole, *Village of Edmore*, 322 Mich App at 262, we cannot conclude that the first sentence of Section 5.1 contains a typographical error, and instead believe, like the trial court,[1] that the Operating Agreement is ambiguous, and we must look to extrinsic evidence for its interpretation.[2] Again, "[t]he primary goal in interpreting contracts is to determine and enforce the parties' intent." *Village of Edmore*, 322 Mich App at 262 (quotation marks and citation omitted).

Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering the contract. Thus, the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning. [*Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003) (quotation marks and citation omitted).]

Plaintiffs take issue with two of the trial court's findings in this respect. In its opinion and order, the court determined Jason was properly made a member of the LLC in accordance with the terms of the Operating Agreement, finding:

There is no evidence of any typographical mistake or error in the agreement in Section 5.1 and the amendment is effective to change the membership interest of Howard and plaintiff and defendant was added at that time; the Section 5.1 was meant to state that consent of all members was not required to add members, as Howard had 90% interest at the time.

\* \* \*

The 2014 hand written amendment coincides with the change in the K-1s prepared by an outside tax accountant for the LLC in 2014, over which plaintiff was granted supervising membership authority by Howard.

---

[1] The trial court stated, "[T]he operating agreement does contain an ambiguity, resolved through resorting to external evidence . . . .".

[2] Plaintiffs also argue that their position is consistent with the Michigan Limited Liability Company Act, citing MCL 450.4501(2)(b) and MCL 450.4506(1). But MCL 450.4506(1) states, in pertinent part, "*Unless otherwise provided in an operating agreement*, an assignee of a membership interest in a limited liability company that has more than 1 member may become a member only upon a unanimous vote of the members entitled to vote." (Emphasis added.) Thus, an operating agreement which declines the requirement for unanimous consent does not necessarily violate this provision.

These findings are appropriate under the law and supported by the record. " 'The law is clear that where the language of the contract is ambiguous, the court can look to such extrinsic evidence as the parties' conduct, the statements of its representatives, and past practice to aid in interpretation.' " *Klapp*, 468 Mich at 470 (quotation marks and citation omitted). The court's findings address the parties' conduct and practice.

Further, neither of the findings amount to clear error. The record demonstrates that prior to his 2014 handwritten amendment of the Operating Agreement, the authenticity of which neither party challenges, Howard held 90% of the interest in the LLC. It would not be unreasonable, then, to weigh Howard's actions against Curtis's testimony to determine the intent of the parties in drafting the Operating Agreement. The record also demonstrates that the tax documents or K-1s to which the court refers reflected the change in membership executed by Howard's handwritten amendment, and that Curtis at least should have seen these documents.

Plaintiffs argue that the K-1s reflect only a transfer of interest, rather than membership, in accordance with Section 7.2 of the Operating Agreement, but a review of the K-1s undermines plaintiffs' assertion. Beginning in 2014, the LLC's K-1s included individual K-1 documents for Howard, Curtis, and Jason. The individual K-1s for Jason had the boxes checked for "Domestic partner" and "Limited partner or other LLC member" And the K-1s further list all three as partners.

Curtis denies ever having reviewed K-1s other than his own. He testified on direct examination that he never saw K-1s other than his own because his dad "took care of all that," and that he never signed tax returns for the LLC while Howard was alive. On cross-examination, however, he admitted to being listed as tax matters partner for the LLC on federal government documents, and to using his own K-1 (which showed an increase in his membership interest from 10% to 25% per the handwritten amendment) to file his personal tax return. It was reasonable for the trial court to give greater weight to this evidence. Thus, we see no clear error in the trial court's findings regarding the tax documents. *Hill*, 276 Mich App at 308 (factual findings are clearly erroneous where "there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake").

Nor do we find merit in plaintiffs' argument that the trial court erred in considering Howard's initial ownership percentage and the tax documents to interpret the Operating Agreement because such consideration focused "on the intent of Howard Smith when he wrote the 2014 secret note instead of the intent of the parties (plural) when they entered the Operating Agreement in 2010[.]" Contrary to plaintiffs' argument, the court appears to have instead used this evidence of the parties' conduct, along with the language of Section 5.1 in the context of the Operating Agreement as a whole, to determine that it was the parties' intent not to require unanimous consent to add new members to the LLC when the Operating Agreement was drafted. Such an interpretation of the Operating Agreement is further supported by Section 5.3, which states, "Any attempted assignment of a Member Interest, or any part thereof, not in compliance with this Article is null and void and will be treated as a withdrawal in violation of this Agreement by the assigning Member." It seems highly unlikely that Howard would have added Jason as a member of the LLC if he believed the action would violate Section 5.1 and result in his withdrawal

from the LLC. Indeed, after adding Jason as a member, he retained a majority membership interest in the LLC.

On the basis of the above, we decline to substantively address plaintiffs' argument that tax documents cannot make an individual a member of an LLC. The court did not reason that Jason became a member of the LLC by virtue of the tax documents, but rather that the tax documents reflected the parties' intent when drafting the agreement that consent would not be required to add members.

Considering the terms of the Operating Agreement and appropriate extrinsic evidence presented for interpretation, we hold the trial court did not err in concluding Jason was properly made a member of the LLC under the Operating Agreement.

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani