*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOLAS OIL & GAS EXPLORATION CO., PETRO
J. TOLAS, GEORGE J. TOLAS, JOHN A.
ERITANO, PETER S. WILES, DOUGLAS
DARNELL, WILLIAM WERNER, SANDY T.
WILES, PAUL FRANK PATRICK, ROBERT
WERNER, and TOLAS BROTHERS, INC.,

        Plaintiffs-Appellees/Cross-
        Appellants/Cross-Appellees,

FOR PUBLICATION
June 15, 2023
9:00 a.m.

v

No. 359090
Montcalm Circuit Court
LC No. 2015-020942-CZ

BACH SERVICES & MANUFACTURING, LLC,
BACH OILFIELD SERVICES, LLC, R CUBED,
LLC, ROBIN BACH, RICK BACH, BACH
ENERGY SYSTEMS, LLC, DAN VERWEY,
ANDY VERWEY, DAVID VERWEY, and D&J
EXPLORATION, LLC,

        Defendants-Cross-Appellees,

and

KENNETH D. RUSSELL,

        Defendant-Appellant/Cross-Appellee,

and

DAVID BIEGANOWSKI,

        Defendant-Cross-Appellee/Cross-
        Appellant.

Before: MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

-1-

This appeal arises from a bitter battle between the owners of interests in an agreement to operate an oil well in Eaton County, Michigan. Plaintiffs-appellees/cross-appellants Petro J. Tolas and George J. Tolas, along with their related entities, plaintiffs-appellees/cross-appellants Tolas Oil & Gas Exploration Co and Tolas Brothers, Inc. (collectively, the Tolas Group), organized several other interest owners—plaintiffs-appellees/cross-appellants John A. Eritano, Peter S. Wiles, Douglas Darnell, William Werner, Sandy T. Wiles, Paul Frank Patrick, and Robert Werner—and together sued defendants/appellees Robin Bach, Rick Bach, and their related entities defendants/appellees, Bach Services & Manufacturing, LLC (Bach Servs & Mfg.); Bach Oilfield Services, LLC; R Cubed, LLC; and Bach Energy Systems, LLC (collectively, the Bach Group), over their involvement in the operation of the well. Plaintiffs also sued defendants-cross-appellees Dan Verwey, Andy Verwey, David Verwey, and D&J Exploration, LLC, for acts taken as interest owners who supported the Bach Group. Finally, plaintiffs sued defendant-appellant/cross-appellee, Kenneth D. Russell, who also owned an interest in the well and who supported the Bach Group's proposals, and defendant-cross-appellee/cross-appellant, David Bieganowski, who was the lawyer who represented some defendants in earlier litigation. After approximately five years of contentious litigation, the trial court dismissed the case for lack of progress after plaintiffs failed to pay a sanction within several months after the court ordered the sanction. Although the trial court ultimately found that plaintiffs engaged in dilatory tactics that warranted dismissal for lack of progress after the failure to pay the sanction, the trial court refused the request for additional sanctions by Russell and Bieganowski.

On appeal, Russell argues that the trial court erred when it refused to order plaintiffs to reimburse him for his reasonable attorney fees despite the evidence that plaintiffs knew that their claims against him had no basis in fact or law. Bieganowski similarly argues that the trial court erred when it refused his request to sanction plaintiffs for bringing frivolous claims against him. On cross-appeal, plaintiffs argue that the trial court erred in several respects involving the orders that led to the dismissal of the case for lack of progress, erred when resolving several motions for summary disposition, and erred when it set aside a default by David Verwey and D&J Exploration. They also maintain that the trial judge was biased and ask this Court to remand the case to a different judge. Because we conclude that the parties have not identified any errors that warrant relief, we affirm.

## I. THE DEFAULTS

### A. PRESERVATION

We first address plaintiffs' argument on cross-appeal that the trial court erred when it set aside the default entered against David Verwey and his entity, D&J Exploration, after they failed to timely answer plaintiffs' second amended complaint.

In civil cases, Michigan follows "the 'raise or waive' rule of appellate review." See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Under that rule, litigants must preserve an issue for appellate review. See *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 344; 852 NW2d 180 (2014), vacated not in relevant part 497 Mich 927 (2014). To preserve an issue, the party asserting error must demonstrate that the issue was raised in the trial court. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Moreover, the moving party must show that the same basis for the error claimed on appeal was brought to the

-2-

trial court's attention. See *Smith v Musgrove*, 372 Mich 329, 337; 125 NW2d 869 (1964) (stating that counsel had a "clear duty, on peril of loss of right to allege reversible error," to bring the specific error to the trial court's attention); *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 642; 534 NW2d 217 (1995) (noting that the party asserting error objected on relevance, but asserted entirely different errors on appeal, and holding that only the ground for decision actually asserted in the trial court had been properly preserved). If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue. See *Bailey*, 304 Mich App at 344-345. "However, this Court 'may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented.' *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006)." *Miller v Mich Dep't of Corrections*, __ Mich App __, __; __ NW2d __ (2022) (Docket No. 356430); slip op at 7.

The trial court allowed plaintiffs to file the second amended complaint over objection and after a lengthy dispute in which the trial court sanctioned plaintiffs for misconduct involving the filing. By the time of the default, David Verwey and D&J Exploration were no longer represented by counsel. David Verwey moved to set aside the defaults, and plaintiffs opposed the motion. In opposing the motion, plaintiffs challenged whether David Verwey had established grounds for setting aside the defaults, but they failed to argue that David Verwey could not move on behalf of D&J Exploration because he was not licensed to practice law. By failing to raise this issue in the trial court, plaintiffs deprived the trial court of the opportunity to correct it in a timely and equitable manner and waived the error. See *Walters*, 481 Mich at 388; *Samuel D Begola Servs*, 210 Mich App at 642.

Plaintiffs state on appeal that, even if it failed to properly preserve a claim of error, this Court has an obligation to review the claim for plain, outcome-determinative error. In criminal cases, our Supreme Court adopted a plain error test for claims of error that were not properly preserved in the trial court. See *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). Under that test, a defendant who did not preserve a claim of error in the trial court might be able to obtain appellate relief on the basis of that error if able to demonstrate that the error was plain or obvious and that the error affected the outcome of the lower court proceedings. See *id*. Even if a criminal defendant establishes a threshold error, the appellate court still lacks the authority to grant relief unless the defendant also shows that they were *actually innocent* or that the error so seriously affected the fairness, integrity, or public reputation of judicial proceedings that it warrants relief independent of the defendant's *innocence*. *Id*. This Court has applied the plain error rule to appeals involving civil claims. See, e.g., *Henderson v Dep't of Treasury*, 307 Mich App 1, 9; 858 NW2d 733 (2014). However, our Supreme Court has not extended the plain error rule to civil cases and application of the plain error rule contravenes Supreme Court precedent.[1]

---

[1] Moreover, *Henderson* is an example where a civil case merely cites a criminal case for a particular legal principle without analyzing whether a criminal-law principle applies in a civil context. Often they do not, especially when the criminal-law principle is grounded in a criminal defendant's constitutional rights.

In *Napier v Jacobs*, 429 Mich 222; 414 NW2d 862 (1987), our Supreme Court considered whether to alter the traditional application of preservation requirements to civil cases and upheld its continued application. The Court acknowledged that the failure to raise an issue in the trial court had traditionally resulted in a waiver of the claim of error, and it noted the rationale for the rule: it arose, the Court stated, from the adversarial nature of civil litigation and the need for judicial efficiency. See *id*. at 228. The Court also agreed that there was "something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right." *Id*. at 228-229 (quotation marks and citation omitted). The Supreme Court asserted that the rationale even applied in the context of a challenge to the sufficiency of the evidence in a civil proceeding. The Court explained that a party "faced with a challenge during trial might well be able to remedy an insufficiency without the time and expense of *appellate* review followed by a new trial." *Id*. at 229 (emphasis in original). Requiring a party to preserve a challenge to the sufficiency of the evidence in a civil case, the Court observed, might also "save precious judicial resources." *Id*.

Turning to the claim of error before it, the Court in *Napier* recognized that the defendant had not properly preserved his claim that the jury's verdict was unsupported by sufficient evidence because he did not raise that issue in the trial court; for that reason, it held that the defendant waived his claim of error. *Id*. at 230. The Supreme Court recognized that the Court of Appeals had the discretion—as opposed to the obligation—to review unpreserved claims of error, but determined that the Court of Appeals abused its discretion when it did so in the case before it because a mere money judgment did not rise to the level of a miscarriage of justice, even if entered with insufficient evidence to support it. See *id*. at 233-234. The Court explained that a contrary rule would "impose a duty in every civil case on the trial judge to review sua sponte the sufficiency of the evidence and to grant unrequested verdicts." *Id*. at 234.

The Court also carefully distinguished civil cases from criminal cases: "The instant case does not involve, for example, a criminal defendant faced with imprisonment who claims for the first time on appeal that the evidence at trial was insufficient to support the verdict." *Id*. at 233. In such a situation, the Court stated, appellate review of a "plain error" might be the only adequate remedy for the criminal defendant because a malpractice claim "could hardly compensate a wrongfully convicted person." *Id*. at 233 n 2.

In *Napier*, not only did our Supreme Court explicitly recognize the existence—and need— for a plain error rule for criminal appeals, it also clearly chose not to extend that rule to the civil context. Instead, the Court chose to retain a raise or waive rule of appellate review for civil cases and held that an adverse money judgment was not by itself sufficient to warrant setting aside that rule. See *id*. at 227-237. Modifying the rule, the Court related, "would comport neither with the adversary process, judicial efficiency, nor public policy interests." *Id*. at 237. Accordingly, this Court's decision to extend the rule to civil appeals contravenes the decision in *Napier*.

Our Supreme Court has continued to adhere to the raise or waive rule since the decision in *Napier*. See *Mr Sunshine v Delta College Bd of Trustees*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (M.J. KELLY, J., concurring); slip op at 7-10. Indeed, in *Walters*, the Supreme Court restated its adherence to the rule and emphasized that the litigants in a civil case have a duty to raise claims of error in the trial court or waive them: "Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its

resolution of their dispute." *Walters*, 481 Mich at 388. The Court then determined that a party's failure to assert an otherwise mandatory statutory provision in the trial court amounted to waiver of that provision; for that reason, it declined to review the claim of error. Notably, the Court did not feel any obligation to determine whether the error amounted to plain error that affected the outcome of the proceedings. See *id*. at 389. As Judge M.J. KELLY aptly noted, this Court does not have the authority to ignore Supreme Court precedent. See *Mr Sunshine*, ___ Mich App at ___ (M.J. KELLY, J., concurring); slip op at 9-10, citing *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). Consequently, we must apply the raise or waive rule in civil cases as stated in *Napier* and continued in *Walters*.[2] Lest there be further confusion on this point, we hold that the plain-error rule of *Carines* does not apply to civil cases and it is error to do so as it contradicts established Supreme Court precedent, which controls.[3] Accordingly, we decline to address that claim of error.


## B. STANDARD OF REVIEW

Plaintiffs properly preserved their arguments that David Verwey did not support his motion with an affidavit and did not identify grounds for setting aside the default. This Court reviews de novo whether the trial court properly interpreted and applied the court rules. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008). This Court reviews for an abuse of discretion a trial court's decision on a motion to set aside a default. See *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Id*. A trial court necessarily abuses its discretion when it premises its decision on an error of law. See *Gay v Select Specialty Hosp*, 295 Mich App 284, 292; 813 NW2d 354 (2012).

## C. ANALYSIS

A trial court may only set aside a default on the motion of a party if the moving party demonstrates "good cause" and identifies facts "showing a meritorious defense" verified as required under MCR 1.109(D)(3). See MCR 2.603(D)(1). To meet the requirements of MCR 2.603(D)(1), the movant must establish both good cause and a meritorious defense. See *Saffian*, 477 Mich at 14.

A party can, in relevant part, establish good cause by showing a reasonable excuse for the failure that created the default. See *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 233; 600 NW2d 638 (1999). The trial court should consider a list of factors in determining whether there was good cause: whether the party completely failed to respond or simply missed the

---

[2] This holding does not conflict with *Henderson* or any of the other cases that applied the *Carines* plain-error rule because none of those cases analyzed the issue and held that it applies to civil cases.

[3] This holding does not apply to termination of parental rights cases, which present different constitutional considerations. See, e.g., *In re Hudson*, 481 Mich 928; 763 NW2d 618 (2009).

deadline; if the party simply missed the deadline, how long afterward the party filed; how long the movant took to move to set aside the default; it should examine whether there was defective process or notice; it should consider the circumstances behind the failure to file or timely file;whether the failure was knowing or intentional; the size of the judgment, and whether the judgment results in ongoing liability, and whether the internal policies of the insurer were followed, if the defaulting party was an insurer. See *Village of Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 255-256; 911 NW2d 241 (2017). Additionally, the strength of the meritorious defense is a factor to consider when examining whether there was good cause: "if a party states a meritorious defense that would be absolute if proven, a lesser showing of 'good cause' will be required than if the defense were weaker, in order to prevent a manifest injustice." *Alken-Ziegler*, 461 Mich at 233-234.

David Verwey indicated in his motion that he preferred conventional mail and only inadvertently missed the e-mailed second amended complaint. He explained that his computer skills were rudimentary, that he had poor eyesight, and that he generally had trouble with e-mails. He stated that he was unaware of the filing until December 20, 2018, and that he moved to set aside the default by January 2019.

The trial court weighed the circumstances regarding the entry of the defaults and determined that David Verwey and D&J Exploration had established good cause to set aside the defaults. The court recognized that David Verwey had previously been represented by counsel and agreed that David Verwey was bound by counsel's earlier decision to allow electronic service. Nevertheless, the trial court determined that the circumstances warranted setting aside the defaults. Although the trial court did not review the specific factors applicable when setting aside a default, the record supported its decision.

It was evident that David Verwey's failure to respond was unintentional. Although he was no longer represented by a lawyer, David Verwey had participated in the litigation for years. He also asserted a credible explanation that he simply missed the e-mail that contained the second amended complaint because he was older, had limited computer skills, and had poor eyesight. There was no indication in the record that he was attempting to evade his obligation to respond or acted from improper motives. David Verwey also showed that he responded to the default within a reasonable time. Plaintiffs also sought a default against a lay person and an unrepresented entity within a relatively short time after the deadline for filing a response—especially when considering how complex the litigation was and how hard-fought it had been to that point. Indeed, plaintiffs had been sanctioned for their conduct involving the second amended complaint, which makes the quick decision to seek a default premised on that same complaint somewhat suspect. Under the totality of the circumstances, the trial court did not err in concluding that the movants established good cause for their tardy response. See *Village of Edmore*, 322 Mich App at 255-256.

Contrary to plaintiffs' contention, David Verwey's motion included an affidavit. David Verwey filed a form for motions to set aside defaults that had been approved by the State Court Administrative Office (SCAO) and that had an affidavit built into it. David Verwey properly filled out the section for a notary. The affidavit also specifically incorporated his statements, which he attached to the motion. The incorporation of the statements by reference, when read in conjunction with the assertion that he made the statements on actual knowledge and would be able to testify about those facts, rendered the statements averments; as such, the statements met the requirements

of MCR 1.109(D)(3) and MCR 2.603(D)(1). David Verwey's incorporated statements did not, however, identify a specific meritorious defense, even though he checked the box on the SCAO form for having such a defense. In that sense, David Verwey did not strictly comply with MCR 2.603(D)(1). Nevertheless, that defect did not preclude the trial court from granting the motion.

A party must normally establish a meritorious defense by submitting an affidavit that identifies evidence to support the defense; the purpose of that rule is to provide the court with information adequate to determine whether the movant has a meritorious defense. See *Huntington Nat'l Bank v Ristich*, 292 Mich App at 390, 392; 808 NW2d 511 (2011). This case did not involve a situation in which the litigation had not progressed before the default. The parties had been litigating the case for years and plaintiffs were well aware that David Verwey and D&J Exploration had contested liability and had asserted that plaintiffs could not establish their claims. Indeed, David Verwey and D&J Exploration had filed an answer to a previously filed complaint, and concurred in the opposition to plaintiffs' motion for leave to file the second amended complaint.

Although the court rule states that a motion to set aside a default "shall only be granted" if the moving party establishes good cause and a meritorious defense, the court rules also provide that a court "may set aside a default and a default judgment in accordance with MCR 2.612." See MCR 2.603(D)(3). Under MCR 2.612(C)(1)(f), a trial court can grant relief for any "other reason justifying relief." Our Supreme Court has stated that, although MCR 2.603(D)(3) should not be read to obliterate the requirements of MCR 2.603(D)(1), trial courts still have the discretion to grant relief under MCR 2.603(D)(3) to prevent manifest injustice. See *Alken-Ziegler*, 461 Mich at 234 n 7. Relief may be granted under MCR 2.612 when, for example, the default was obtained through improper conduct. See *Heugel v Heugel*, 237 Mich App 471, 478-479; 603 NW2d 121 (1999).

The trial court was well aware of the strengths and weaknesses of plaintiffs' claims, especially the weaknesses, against David Verwey and D&J Exploration. Because it was familiar with the merits of their defenses, the trial court did not need a detailed recitation of facts in an affidavit in order to make a just decision on the motion. Given the circumstances involved in the dispute over the second amended complaint, the fact that David Verwey was unrepresented and had made an effort to participate in the litigation, and the indications that the failure to timely respond was inadvertent and did not prejudice plaintiffs, the trial court had the discretion to overlook the technical failure and grant the motion to set aside under MCR 2.603(D)(3) to prevent a manifest injustice. See *Alken-Ziegler*, 461 Mich at 234 n 7. And the trial court's decision fell within the range of reasonable outcomes. See *Saffian*, 477 Mich at 12.

## II. SANCTIONS, STAY, AND DISMISSAL

### A. PRESERVATION

Plaintiffs argue on appeal that the trial court erred in numerous respects when it sanctioned them for misconduct involving experts,[4] stayed the case pending payment of the sanction, and then dismissed their claims for lack of progress after they failed to pay the sanction for several months.

In the trial court, the parties vigorously disputed whether the trial court should order plaintiffs to pay the reasonable attorney fees incurred by Russell and the Bach Group as an alternate sanction to striking plaintiffs' experts. Specifically, plaintiffs argued that the trial court should reject the argument by Russell and the Bach Group that they were entitled to all their costs and fees associated with the dispute over plaintiffs' experts; in lieu of that, plaintiffs suggested that the court should sanction them $500 or $1000. Plaintiffs also disputed generally whether the trial court should stay the proceedings pending payment. Therefore, whether the trial court abused its discretion when it selected the payment of reasonable attorney fees as an alternate sanction and whether it abused its discretion when it stayed the proceedings pending payment of the sanction were preserved for appellate review. See *Glasker-Davis*, 333 Mich App at 227.

Plaintiffs did not, however, assert many of the grounds for relief that they explicitly and implicitly now argue on appeal. They did not ask the trial court to hold an evidentiary hearing to assess the reasonableness of the fees actually awarded. They did not assert that the trial court could not award the Bach Group its reasonable fees because the Bach Group only concurred in Russell's motion to strike and did not file its own motion to compel. They did not assert in the trial court that the trial court had an obligation to establish a payment schedule or a payment plan in its order, or that it had an obligation to conduct periodic reviews of the payments, or that any of these shortcomings deprived them of their constitutional rights. They also did not assert that the trial court's authority to dismiss a case for lack of progress was limited to a certain class of cases or limited to cases that had been placed on a no-progress docket. Therefore, these claims of error have not been properly preserved for appellate review. See *Samuel D Begola Servs*, 210 Mich App at 642. Plaintiffs raised other claims of error for the first time in their motion for reconsideration of the trial court's order compelling them to pay the sanction. They argued, for example, that defendants did not comply with MCR 2.310(C)(3), which, they argued, was a prerequisite to an award of sanctions. An argument raised for the first time in a motion for reconsideration does not preserve that claim of error for appellate review. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). By failing to bring those arguments to the trial court's attention, plaintiffs waived those claims of error, see *Walters*, 481 Mich at 388-389, and we decline to exercise our discretion to review them, *Napier*, 429 Mich at 233-234. Accordingly, we limit our discussion to those claims of error that were properly preserved for appellate review.

---

[4] The misconduct involved plaintiffs failing to provide adequate disclosures regarding their proposed experts, providing incomplete or evasive answers regarding their experts, identifying fact witnesses as experts and expert witnesses as fact witnesses, and having failed to retain some of the proposed expert witnesses.

## B. STANDARD OF REVIEW

This Court reviews a trial court's decision to sanction a party for a discovery violation for an abuse of discretion. See *Swain v Morse*, 332 Mich App 510, 518 n 8; 957 NW2d 396 (2020). This Court also reviews a trial court's inherent authority to sanction misconduct and control its docket for an abuse of discretion. See *Brenner v Kolk*, 226 Mich App 149, 160-161; 573 NW2d 65 (1997). This Court also reviews a trial court's decision to dismiss a case for no progress for an abuse of discretion. See *Reynolds v Dobbertin*, 366 Mich 162, 164; 113 NW2d 888 (1962). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. See *Swain*, 332 Mich App at 518 n 8. This Court, however, reviews de novo whether the trial court properly applied the law. See *Gay*, 295 Mich App at 291. When a trial court exercises its discretion under a mistake of law, it necessarily abuses its discretion. *Id*. at 292.

## C. THE POWER TO SANCTION

Plaintiffs maintain in part that the trial court lacked the authority to stay the proceedings as a measure to compel a party to pay a judgment. More specifically, they state that Russell and the Bach Group were limited to obtaining and executing a judgment on the sanctions, and the trial court could not use its contempt power to compel payment. Plaintiffs misapprehend the nature of the stay imposed by the trial court. The trial court explicitly stated that it was awarding Russell and the Bach Group their attorney fees associated with the expert witness dispute and it deliberately stayed the case pending payment of that award as an alternate sanction to striking the witnesses for the discovery violation. It cited both MCR 2.313 and its inherent power to control its docket as authority for its decision to impose sanctions and stay the proceedings. Therefore, plaintiffs' argument that the court was misusing its power to enforce a money judgment through its contempt power is inapposite. The trial court punished plaintiffs' violation of the discovery order and sanctioned plaintiffs for exacerbating and extending the discovery dispute using dilatory tactics. As such, the relevant inquiry is whether the trial court had the authority to sanction the misconduct by ordering the payment of fees and staying the case pending payment of the sanction.

Our Supreme Court codified rules for the enforcement of discovery under MCR 2.313.[5] Under MCR 2.313(A), a party may move for an order compelling disclosure or discovery. An order to compel disclosure refers to an order compelling compliance with the mandatory disclosures stated under MCR 2.302(A). See MCR 2.313(A)(2)(a). An order to compel discovery refers to attempts to obtain discovery such as through depositions, interrogatories, or requests for inspection. See MCR 2.313(A)(2)(b). An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond. MCR 2.313(A)(2)(4). If the trial court grants a motion to compel, it may order the party whose conduct necessitated the motion to pay the moving party's reasonable expenses:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court may, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party

---

[5] The Supreme Court amended the rule effective January 1, 2020. See 504 Mich xcix, cxxii-cxxvii (2019). Because the amendments did not materially alter the rule, we cite the current version.

or attorney advising such conduct, or both, to pay to the moving party the reasonable expenses incurred as a result of the conduct and in making the motion, including attorney fees, unless the court finds that the moving party filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, the opposition to the motion was substantially justified, or other circumstances make an award unjust. [MCR 2.313(A)(5)(a).]

Contrary to plaintiffs' contention on appeal, the court rules do not limit the trial court's authority to punish discovery violations to only ordering a party to pay only the attorney fees incurred to bring the actual motion to compel. It also provided that, when granting a motion to compel discovery under MCR 2.313(A), a trial court "may order such sanctions as are just," and further provided that the trial court may order—but was not limited to ordering—an "action authorized under subrule (B)(2)(a), (b), and (c)," MCR 2.313(A)(6). Under those provisions, a trial court could order that designated facts be treated as established, see MCR 2.313(B)(2)(a); it could limit the party who violated the order from opposing or supporting a claim or defense, or from introducing evidence, see MCR 2.313(B)(2)(b); and it could strike pleadings, stay proceedings until the order is obeyed, dismiss the action in whole or in part, or render a default judgment, MCR 2.313(B)(c). The Supreme Court provided substantially similar authority to sanction the failure to make the disclosures required under MCR 2.302(A) and (E). See MCR 2.313(C)(1). Accordingly, trial courts are provided with broad authority to fashion remedies for discovery violations and those provisions included the power to stay a case pending compliance with the discovery order.

The Supreme Court similarly provided trial courts with broad authority to punish parties who fail to comply with a discovery order entered under MCR 2.313(A). The court "may order such sanctions as are just," which includes, "but [is] not limited to," entering an order designating facts as "established," MCR 2.313(B)(2)(a); entering an "order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence," MCR 2.313(B)(2)(b); or, in relevant part, entering an order striking pleadings, striking part of pleadings, staying proceedings until the order is obeyed, dismissing the action or entering a default, MCR 2.313(B)(2)(c). The Supreme Court also provided that the trial court could require the party or his or her lawyer, or both, to pay the reasonable expenses, which includes attorney fees, that were "caused by the failure" to obey. MCR 2.313(B)(2).[6]

The court rule reflects the broad inherent power that trial courts have to address misconduct and sanction the parties and lawyers who appear before the court. See *Maldonado v Ford Motor*

---

[6] Plaintiffs contend that this Court cannot rewrite the court rule by allowing a sanction other than that provided under MCR 2.313(B)(2)(a) through (e). That reading, however, negates the introductory clause under MCR 2.313(B)(2), which specifically provides that trial courts are not limited to the enumerated sanctions, but instead may order "such sanctions as are just." The Supreme Court preserved the inherent authority of courts to manage their dockets and sanction misconduct by explicitly stating that the sanctions were not limited to those provided in the court rule.

*Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). And, this inherent power does not depend on statutes or court rules: "This power is not governed so much by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*.; see also *Banta v Serban*, 370 Mich 367, 368; 121 NW2d 854 (1963) ("We have recognized the inherent power of a court to control the movement of cases on its docket by a variety of sanctions including dismissal, discontinuance or involuntary nonsuit even when requests for continuances are timely made and, lacking persuasive merit, are denied."); *Brenner*, 226 Mich App at 160 (stating that trial courts have the inherent authority to sanction misconduct by the litigants even when "there is no statute or court rule addressing the particular form of misconduct"). This inherent authority gives trial courts the discretion to fashion any remedy for misconduct that "promotes fairness and justice." *Brenner*, 226 Mich App at 160. And our Supreme Court long ago held that a trial court may remedy an injustice by staying a proceeding pending payment of an award of costs. See *Clark v Bay Circuit Judge*, 154 Mich 483, 483-484; 117 NW 1051 (1908) (recognizing a trial court's inherent authority and stating that the trial court did not abuse its discretion when it exercised its best judgment in the interest of justice and ordered a stay of the case pending payment of security costs), citing *Henderson v Griffin*, 30 US 151, 158-159; 8 L Ed 79 (1831).

The trial court had the authority to sanction plaintiffs' discovery violations by fashioning an appropriate remedy, which could include an order to compensate Russell and the Bach Group for their costs and reasonable attorney fees caused by the misconduct involving the dispute over plaintiffs' expert witnesses. See MCR 2.313(B)(2). But trial court was "not limited" to ordering the sanctions listed under MCR 2.313(B)(2). Accordingly, the trial court could rely on its inherent authority to order a stay pending payment of the award, if the decision to stay the proceedings was consistent with fairness and justice under the totality of the circumstances. See *Maldonado*, 476 Mich at 376; *Clark*, 154 Mich 483; *Brenner*, 226 Mich App at 160. Because the trial court had the authority to take the actions that it did, it did not err by misapplying the law to its exercise of discretion. See *Gay*, 295 Mich App at 292. The relevant question is whether the trial court abused its discretion by fashioning a remedy that included payment of the reasonable attorney fees at issue and staying the proceedings pending that payment.

## D. THE EXERCISE OF DISCRETION

When crafting an appropriate sanction for the discovery violation, the trial court had to carefully consider a variety of factors and determine what sanction would be just and proper. See *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990). This Court identified a list of nonexhaustive factors that should be considered in fashioning such a remedy:

> (1) whether the violation was wilful or accidental, (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses), (3) the prejudice to the defendant, (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice, (5) whether there exists a history of plaintiff engaging in deliberate delay, (6) the degree of compliance by the plaintiff with other provisions of the court's order, (7) an attempt by the plaintiff to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. [*Id*. at 32-33.]

-11-

The trial court did not specifically discuss the factors when determining what sanction would be appropriate as an alternate to striking the experts, but the record supports its decision to order plaintiffs to reimburse Russell and the Bach Group for the costs and reasonable attorney fees that they incurred in the dispute over the experts, and to stay the proceedings pending payment of the sanction.

Although plaintiffs alleged a wide variety of claims against defendants, a significant portion of their complaint involved allegations that defendants engaged in misconduct involving a gas lift procedure that was performed on the Miller Well by Bach Servs & Mfg., and a proposed, but never performed, acid wash procedure. Plaintiffs alleged that the misconduct caused them harm. More specifically, they alleged that they incurred unnecessary expenses for the gas lift procedure, which was unneeded, that the gas lift procedure damaged the well, and that the acid wash procedure was properly declined.

To establish these allegations, plaintiffs would have to present testimony about the nature of the procedures, about whether the procedures were necessary or whether a reasonable operator would authorize the procedures under similar circumstances, and about the expected results of the procedures and any risks associated with the procedures. Finally, plaintiffs would have to present testimony establishing whether Bach Servs & Mfg. properly performed the gas lift procedure and whether the procedure caused harm to the Miller Well. The allegations involved matters that were far beyond the knowledge of ordinary persons; as a result, plaintiffs would have to present expert testimony to establish those facts. See *Bryant v Oakpointe Villa Nursing Centre, Inc*, 471 Mich 411, 427; 429-430; 684 NW2d 864 (2004) (recognizing that the fact-finder must rely on expert testimony when the assessment of the risks and benefits associated with a particular procedure are beyond the scope of common knowledge); *Nelson v American Sterilizer Co (On Remand)*, 223 Mich App 485, 489; 566 NW2d 671 (1997) (stating that expert testimony is essential when a particular causal relationship is scientific in nature).

Despite the obvious need for expert testimony, and even though defendants had requested disclosures about plaintiffs' proposed experts, after more than two years of litigation, plaintiffs still had not provided defendants with sufficient information about their proposed experts to enable defendants to prepare their defenses. For that reason, Russell moved under MCR 2.313(A)(2)(b) for an order compelling discovery, including a request for documentation on plaintiffs' experts. Plaintiffs responded that their list of possible experts was sufficient—specifically, they wrote that at "this early stage it is not known which if any [expert] will actually testify." They further asserted that they had not met with their proposed experts and had no discoverable correspondence. Plaintiffs' answers were evasive or incomplete and had to be treated as a failure to disclose. See MCR 2.313(A)(4). After a hearing, the trial court granted Russell's motion and ordered plaintiffs to identify their expert witnesses and to disclose the substance of their testimony by June 30, 2018, or the experts would be stricken.

Plaintiffs responded one day before the deadline by listing eight proposed experts and offering a short sentence describing their proposed testimonies. Plaintiffs did not provide adequate documentation about the experts. Russell moved to strike the experts on the ground that plaintiffs again failed to provide the requested documentation, leaving him in a position where he would have to go into depositions "essentially blind." Russell also noted that, according to plaintiffs, some of the proposed experts would actually provide fact testimony, not expert testimony, and

others had not been retained.  Russell asked the court to strike the witnesses and order plaintiffs to pay his costs for bringing the motion.  The trial court agreed and orally stated that it would strike the witnesses.  After the trial court granted the motion to strike, plaintiffs objected to Russell's proposed order.  The trial court learned at the next hearing that plaintiffs had listed persons as their proposed experts—and asserted that the proposed experts would testify about certain matters—without even having contacted the proposed expert witnesses.  Accordingly, in November 2018, the trial court entered an order granting the motion to strike the experts and barred plaintiffs from replacing the experts.

Plaintiffs' response to the motion to compel was so devoid of any substance that it permitted an inference that plaintiffs deliberately submitted a deficient response.  Moreover, plaintiffs' decision to list witnesses as experts who were fact witnesses and to list proposed expert witnesses whom they had not even retained suggested that plaintiffs' response was part of a plan to delay the litigation and hinder defendants' ability to defend against the allegations that required expert support.  Because the evidence suggested that the failure was deliberate, that factor weighed in favor of a more severe sanction.  See *Dean*, 182 Mich App at 32-33.

In December 2018, plaintiffs moved for reconsideration and argued that the trial court's decision to strike the experts was too extreme.  Plaintiffs suggested that a lesser sanction would be more appropriate.  Plaintiffs also asked the trial court to order Russell and the Bach Group to make their experts available for deposition and document their experts' proposed opinions.  Russell responded in January 2019 and stated that he should not be required to respond to that request because plaintiffs still had no expert; specifically, he noted that the one expert whom the trial court allowed plaintiffs to retain had informed Russell that he had no intention of testifying on plaintiffs' behalf.  For that reason, defendants moved to strike that witness too.

Plaintiffs had identified experts who were unlikely to provide expert testimony and failed to disclose any meaningful discovery about their experts' qualifications or opinions.  Despite plaintiffs' own failures, plaintiffs insisted that defendants should provide them with full disclosures about defendants' own experts.  Plaintiffs' effort to get defendants to disclose their experts and provide information about their possible opinions under these circumstances further suggested that plaintiffs were engaged in gamesmanship in the discovery dispute over experts.

The trial court returned to the matter of the experts in September 2019.  The trial court characterized plaintiffs' failure to secure and disclose its experts as "troubling" and even opined that plaintiffs' inability to find an expert who would testify favorably was probably because their claims lacked merit.  Nevertheless, the trial court determined that its earlier decision to strike was too harsh a remedy, so it decided on reconsideration to allow plaintiffs to replace their expert.

Even though the trial court had allowed plaintiffs to retain one expert, plaintiffs did nothing to provide defendants with adequate discovery about that expert.  Instead, defendants had to investigate the proposed expert and learned that the expert had declined to testify on plaintiffs' behalf.  The trial court correctly stated that plaintiffs' behavior was troubling and suggested that plaintiffs did not in fact have an expert who would support their theory of the case.  Plaintiffs' continued efforts to avoid making full and fair disclosures about their experts was evidence that plaintiffs were deliberately delaying the litigation to gain an advantage.  The fact that plaintiffs

made no effort to rectify the deficiencies in their disclosures before the grant of reconsideration also weighed in favor of a more severe sanction. See *id*.

The record established that plaintiffs did not make a good-faith effort to comply with discovery requests involving the experts and compounded that failure by giving inadequate and misleading responses after the trial court granted Russell's motion to compel. Plaintiffs continued to engage in dilatory tactics during the months that it took to resolve the dispute over a lesser sanction for the discovery violation. Indeed, the trial court had to hold three separate hearings to resolve the matter. Under these circumstances, it was appropriate for the trial court to fashion a remedy that mitigated the harm caused by plaintiffs' initial failure to disclose and their subsequent violation of the order compelling disclosure. It was also reasonable for the trial court to punish the misconduct and deter future misconduct by ordering plaintiffs to reimburse Russell and the Bach Group for all the costs and reasonable attorney fees that they incurred in the dispute over the experts rather than limiting the costs and fees to the costs and fees arising from the motion to strike, as suggested by plaintiffs. The trial court carefully considered plaintiffs' argument that the sanction should be $500 or $1000, because—in the opinion of plaintiffs' lawyer—that number would be sufficient to get his attention, and determined that that figure was not adequate to rectify the harm or deter future misconduct. Rather, the trial court agreed with defendants' contention that they should not have had to pay thousands of dollars in costs and fees on the basis of plaintiffs' repeated failure to make the requested disclosures. Nevertheless, the trial court agreed that some of the costs and fees requested by Russell would have been incurred notwithstanding the misconduct and it disallowed those fees.

The record from the hearings showed that the trial court took its obligation to fashion an appropriate sanction seriously and carefully weighed various factors when crafting an appropriate sanction. Under the totality of the circumstances, the decision to award those fees that could be directly attributed to plaintiffs' repeated failure to make adequate disclosures in discovery, and to comply with the court's order to compel, fell within the range of reasonable outcomes. See *Swain*, 332 Mich App at 518 n 8. There was also no indication in the record that plaintiffs were indigent or that the sanction would otherwise effect an undue hardship on plaintiffs. Indeed, plaintiffs initiated the litigation and prosecuted their claims for years, which included two appeals to this Court.

Plaintiffs also engaged in various tactics to delay and avoid paying a previous sanction. They moved for reconsideration of that previous sanction and also moved for relief from judgment challenging the same order. They even requested an evidentiary hearing to establish the reasonableness of the requested fees involving the previous order but did not question the witnesses about their billable hours or fees. They also appealed the decision to order that sanction notwithstanding that it was unlikely to satisfy the requirements for leave to appeal before entry of a final order. These tactics allowed plaintiffs to avoid paying the sanction for almost a year.

The record also showed that plaintiffs continued to engage in dilatory tactics that increased the time and expense of the litigation while contesting the earlier ordered sanction. Under the totality of these circumstances, it was entirely reasonable for the trial court to limit plaintiffs' ability to further engage in such tactics by staying the proceedings until plaintiffs demonstrated their commitment to moving the case forward by paying the sanction. See *id*.

Accordingly, the trial court did not abuse its discretion when it ordered plaintiffs to pay the reasonable attorney fees and costs incurred by Russell and the Bach Group as an alternate sanction to striking the experts; and the trial court did not abuse its discretion when it stayed the proceedings pending payment of the sanction. See *Saffian*, 477 Mich at 12.

## E. DISMISSAL

Plaintiffs also argue that the trial court abused its discretion when it granted defendants' motions to dismiss the case for lack of progress.

Under MCR 2.501, which governs the scheduling of trials, a trial court should either enter a scheduling order under MCR 2.401(B)(2), or should schedule various events to move the case to trial. MCR 2.501(A)(1). A trial court may dismiss an action when there has been no progress toward trial:

> On motion of a party or on its own initiative, the court may order that an action in which no steps or proceedings appear to have been taken within 91 days be dismissed for lack of progress unless the parties show that progress is being made or that the lack of progress is not attributable to the party seeking affirmative relief. [MCR 2.502(A)(1).]

Once a trial court notices a case for dismissal for no progress, the burden is on the party contesting the lack of progress to show that party was in fact making progress or that it was without fault regarding the lack of progress. See *Kelley v Frank D McKay Realty Co*, 34 Mich App 370, 376-377; 191 NW2d 123 (1971). If a party does not make the required showing after notice, the trial court may dismiss the action for lack of progress; the dismissal is without prejudice unless otherwise specified by the court. MCR 2.502(B)(1). Notably, in addition to the authority to dismiss for lack of progress under MCR 2.502, the trial court had the authority to dismiss the case for the failure to comply with the earlier order and stay as part of its inherent authority to sanction misconduct and control its docket. See *Maldonado*, 476 Mich at 376. Dismissal is, however, a drastic step that should be taken with caution. See *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995). Before ordering dismissal, the trial court should "carefully evaluate all available options on the record and conclude that the sanction is just and proper." *Id*.

This Court has held that before dismissing a case as a sanction, the trial court should consider the factors stated under *Dean*, 182 Mich App at 32-33. See *Vicencio*, 211 Mich App at 507. Our Supreme Court has similarly stated that the trial court should consider, among other factors: (1) the degree of the plaintiff's personal responsibility for the delay, (2) the amount of prejudice to the defendant caused by the delay, (3) whether there exists a lengthy history of deliberate delay, and (4) whether the imposition of lesser sanctions would not better serve the interests of justice. See *North v Dep't of Mental Health*, 427 Mich 659, 662; 397 NW2d 793 (1986).

After hearing arguments on defendants' motion to dismiss, the trial court rejected the contention that it should have set a deadline for the payment of the sanction. The court felt that the order spoke for itself when it stayed the case pending payment. The court also did not believe that partial payments constituted progress on the case. The court stated that it had taken a keen

-15-

interest in the case and had itself wondered why there had been no progress since the Court of Appeals denied leave to hear the appeal regarding the sanction. The court also stated that it had even contemplated sending a no progress notice on its own initiative.

The trial court examined the entire case when determining whether it should be dismissed for lack of progress over the preceding few months. Examining the whole record of progress, the court determined that a sanction less than dismissal with prejudice would not better serve the interests of justice. The court explained that the procedural history demonstrated that plaintiffs had been delaying the case for years, and, on further reflection, it now felt that the record demonstrated that plaintiffs had been engaging in gamesmanship and that the lack of progress since the Court of Appeals' decision was just another example of it:

> That started because there was no CV provided by the plaintiffs on a couple experts, and there was some go arounds about that. That started when there were named experts by the plaintiff[s] that ultimately turned out had no intention of ever testifying for the plaintiffs, but yet were named in that manner.

> That started, also when I think of delays in the case and part of why this has gone on so long, is the multiple amended complaints. Now, the court rule does allow for amendments of complaints, but that created a whole lot of confusion in the beginning when we were starting on the road down summary disposition and which complaint it referred to.

> Again, that is all issues with—that are driven by the plaintiff[s], frankly. And so, when I think of all that, and I think about is there more to this than simply delay that is part of civil litigation? Well, yeah, I think there is. I don't—I think that when I heard the language from one of the defendants that this is just playing games that that is very clear to the Court to be accurate when I think of the entire case and what's going on. And this, specifically, I think is a—a prime example of the game playing.

The trial court also found that it was important to consider whether plaintiffs had the ability to pay the sanction, which would have lifted the stay. It noted that plaintiffs had never had any problem with the fees that had to be paid in the course of ordinary civil litigation. They only had a problem with the sanction. The court also noted that plaintiffs had orally asserted at the hearing that they were then ready and willing to pay the balance owed. The court found on the basis of the evidence that plaintiffs delayed the case deliberately. The court was exasperated by plaintiffs' behavior:

> It's beyond the grasp of this Court to—to—to understand how and why with these corporate entities that if they were interested in their case and not just interested in more delay and playing games, they would have immediately paid this, and we'd be on our way. But they did not.

The trial court stated that MCR 2.502 worked "hand-in-hand" with the stay that it had ordered pending payment of the sanction. The stay, the court explained, was clear: it "had to be

-16-

paid or the case doesn't progress." The court found that plaintiffs chose to allow the case not to progress.

Turning to the matter of prejudice, the trial court held that the death of a plaintiff demonstrated that the delays were causing prejudice. The court also stated that the problems with the experts again showed that the delays were harming the ability to resolve the dispute. The court stated—tongue-in-cheek—that, considering the pace of this case, they would all be driving electric cars before the dispute over an oil well gets resolved. But, on a more serious note, the court found that the constant delays implicated the ability to address damages.

The trial court carefully considered the relevant factors and determined that dismissal with prejudice was appropriate under the totality of the circumstances. The court specifically found that plaintiffs had deliberately chosen to allow the case to cease moving forward after entry of the order awarding sanctions and staying the case, despite the apparent ability to pay the sanction and move the case along. The court further found that plaintiffs did so as part of a historical pattern of gamesmanship and delay. The court concluded that the delays as a whole had prejudiced defendants.

The trial court was in a superior position to judge the weight and credibility of the evidence before it at the hearing after notice of no progress, see MCR 2.613(C), and the record supports its findings. The findings that plaintiffs deliberately delayed progress when progress was solely under their control strongly supported dismissal with prejudice. The finding that the delay was part of a pattern of gamesmanship also supported dismissal with prejudice. See *North*, 427 Mich at 662; *Dean*, 182 Mich App at 32-33. Indeed, the trial court's findings and determinations were sufficient to allow the trial court to dismiss the case under its inherent authority to punish misconduct. See *Maldonado*, 476 Mich at 376; see also *Link v Wabash R Co*, 370 US 626, 630-631; 82 S Ct 1386; 8 L Ed 2d 734 (1962) ("The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."). On this record, we cannot conclude that the trial court abused its discretion when it dismissed the case with prejudice under MCR 2.502(B). See *Saffian*, 477 Mich at 12.

III. PLAINTIFFS' OTHER CLAIMS OF ERROR

In addition to their claims of error involving the default, the sanction, the stay, and the dismissal for lack of progress, plaintiffs assert that the trial court erred when it dismissed many of their claims on motions for summary disposition, and they argue that this case should be remanded to a different judge. Because we conclude that the trial court did not abuse its discretion when it dismissed plaintiffs' case for lack of progress, those claims of error are moot. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). Consequently, we decline to address them.

-17-

IV.  SANCTIONS FOR FRIVOLOUS CLAIMS

A.  STANDARD OF REVIEW

Finally, both Russell and Bieganowski separately appeal and cross-appeal the trial court's orders denying their requests for sanctions against plaintiffs for filing frivolous claims against them.

This Court reviews de novo whether the trial court properly interpreted and applied the relevant law.  See *Gay*, 295 Mich App at 291.  This Court reviews for clear error a trial court's finding that a civil action was frivolous.  See *Bauer-Rowley v Humphreys*, ___ Mich App ___, ___ n 2; ___ NW2d ___ (2022) (Docket No. 358846); slip op at 3.  A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court has made a mistake.  See *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008).  To the extent that the trial court had discretion to order a sanction, this Court reviews the trial court's exercise of discretion for abuse.  See *Swain*, 332 Mich App at 518 n 8.  A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes.  *Id*.  When a trial court exercises its discretion under a mistake of law, it necessarily abuses its discretion.  *Gay*, 295 Mich App at 292.

B.  ANALYSIS

The Legislature provided that,

> if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.  [MCL 600.2591(1).]

A civil action is frivolous if "the party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party," or the "party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true," or the "party's legal position was devoid of arguable legal merit."  MCL 600.2591(3)(a).

A similar rule governs the filing of frivolous documents.  When a party or lawyer signs a document filed with the court, the party's signature constitutes certification that "he or she has read the document," that, "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document [was] well grounded in fact and [was] warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," and that the "document [was] not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  MCR 1.109(E)(5).  If the trial court finds that a document was signed in violation of MCR 1.109(E)(5), the trial court must "impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees."  MCR 1.109(E)(6).

Whether a claim was frivolous must be determined using an objective standard considering the circumstances concerning the claim at the time it was asserted.  See *Bauer-Rowley v*

-18-

*Humphreys*, ___ Mich App at ___; slip op at 3. Moreover, not every error in legal analysis constitutes a frivolous position. *Id.* If the trial court goes beyond assessing the merits of a legal position, such as when a trial court finds that an action was brought for an improper purpose, this Court must defer to the trial court's superior position to judge the parties and the evidence. See MCR 2.613(C); see also *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 147; 946 NW2d 812 (2019). A trial court must articulate a sufficiently clear basis for its decision to allow this Court to review the finding for clear error. See *Home-Owners Ins Co v Andriachi*, 320 Mich App 52, 79; 903 NW2d 197 (2017). Finally, although MCR 1.109(E)(6) provides the trial court with the discretion to select an appropriate sanction for signing a document in violation of the court rule, the Legislature did not give trial courts the discretion to fashion a remedy for filing a frivolous action. Rather, the statute requires the trial court to order the party filing the frivolous action to compensate the opposing party for their reasonable attorney fees and costs incurred in defending the frivolous action, if the trial court finds that the action was frivolous. MCL 600.2591(1).

Throughout the litigation, Russell and Bieganowski argued that plaintiffs' claims were unfounded and brought for improper purposes. They cited both MCL 600.2591 and MCR 1.109 as grounds for ordering plaintiffs to pay their costs and reasonable attorney fees. The trial court, however, did not specifically find that the claims against either Russell or Bieganowski were frivolous. The trial court opined at one point that Bieganowski had made a compelling case that he had been sued for an improper purpose, but it chose not to sanction plaintiffs because plaintiffs' claims against Bieganowski were only a small part of the overall case. Similarly, after Russell renewed his motion for sanctions, the trial court denied Russell's request for sanctions because it felt that the remedy of dismissal was adequate.

Bieganowski and Russell presented evidence that many of the plaintiffs had no knowledge about either Bieganowski or Russell that would warrant bringing claims against Russell or Bieganowski in those plaintiffs' names. Indeed, their evidence tended to suggest that the Tolas Group organized the other plaintiffs and asserted claims on their behalf that were not well founded in fact or law. Additionally, although some of plaintiffs' claims might have had some marginal foundation in the law, plaintiffs' blanket assertion of fraud, conspiracy, and conversion claims with little or no factual support strongly suggested that the claims were not carefully vetted before filing suit. The same inference follows from the constant amendments to the complaint and the resort to gamesmanship involving the experts and second amended complaint.

The record supported a finding that plaintiffs brought their claims against Russell and Bieganowski for improper purposes, but it also supported a contrary finding. The trial court had overseen the proceedings for years and had had the opportunity to view the parties in person. It was also intimately familiar with the legal arguments and evidence. Yet it impliedly rejected the evidence that plaintiffs had brought the claims for an improper purpose. It also impliedly found that there was at least some merit to some of the claims—or an arguable basis for the claims— against Russell and Bieganowski. On the record, we cannot conclude that the trial court clearly erred when it found that plaintiffs did not bring the claims for an improper purpose, and the record does not show that the trial court otherwise misapplied the law when it denied the requests for sanctions. See *Bauer-Rowley*, ___ Mich App at ___ n 2; slip op at 3; *Gay*, 295 Mich App at 291.

## IV. CONCLUSION

There were no errors warranting relief.

Affirmed. As the prevailing party, defendants may tax costs. MCR 7.219(A).

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney