*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ABDULHAKEEM ALSADAH, SABA
INTERNATIONAL, INC., and SABA
INTERNATIONAL, LLC,

UNPUBLISHED
March 18, 2026
11:22 AM

Plaintiffs-Appellants,

v

No. 373040
Wayne Circuit Court
LC No. 22-008693-CB

HANI GHARBIEH and DIGITAL MEDIA
CORPORATION,

Defendants-Appellees.

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

In this breach-of-contract case, plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendants. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a contract dispute between plaintiffs and defendants. On February 4, 2003, Saba International, Inc. (SII), owned by Abdulhakeem Alsadah, and Digital Media Corporation (DMC), owned by Hani Gharbieh, entered into a contractual agreement to facilitate negotiations to transmit a Yemeni TV channel to audiences in the United States. The contractual agreement required DMC to pay SII "a monthly commission fee of ($2000) US dollars (Two Thousand US dollars only) as long as the Yemeni TV channel contract is enforced and payments by the Yemeni television channel are received by GlobeCast accordinglyand [sic] hence forwarded to [DMC]." The commission payment was due to SII once Yemeni TV, a television channel operated by the Yemeni government, entered into a contract with a broadcasting company called GlobeCast, and only as long as that contract stayed in effect. Further, the contractual agreement provided that "[i]f payments from the Yemeni TV are not received, then no payments will be issued to [SII]," and the commission payment only was owed "as long as the Yemeni TV channel contract is not violated and completely enforced and payments by the Yemeni television channel are received accordingly." Simply put, the contractual agreement provided that SII only was

entitled to commission payments from DMC once Yemeni TV paid GlobeCast, and GlobeCast sequentially paid DMC.

On June 8, 2004, GlobeCast reached a distribution agreement with Yemeni TV. Under this agreement, Global Connections was the "customer" which represented Yemeni TV. Global Connections promised to pay GlobeCast $375,000 every three months to "receive, build, and distribute the Yemen TV Program . . . ." Several amendments to the contract between GlobeCast and Global Connections extended the duration of this distribution until March 31, 2015.

In autumn 2014, a militia group, the Houthi, entered the Yemeni capital of Sana'a and disrupted governmental operations. The Yemeni TV channel that was the basis of the parties' contractual agreement had been broadcast from Sana'a. The parties disagree regarding whether GlobeCast continued to broadcast the Yemeni TV channel after the Houthi seized control of the government. According to Gharbieh, the civil war in Yemen ended GlobeCast's broadcasting of Yemeni TV, and therefore DMC stopped receiving payments from GlobeCast in 2014. However, Alsadah believed, or more appropriately speculated, that GlobeCast continued to broadcast the Yemeni TV channel after the civil war.

In any event, regular commission payments under the contractual agreement between DMC and SII continued until 2016. In 2018, $18,000 in commission payments were sent by DMC to SII. From 2019 until 2021, $6,000 per year in commission payments were sent by DMC to SII.

After commission payments ceased in 2021, plaintiffs sued defendants in Wayne Circuit Court, alleging that defendants breached the parties' contractual agreement to initiate and continue those payments. In particular, plaintiffs sought allegedly unpaid commission payments that had accrued since May 2016. Defendants moved for summary disposition under MCL 2.116(C)(10) (no genuine issue of material fact), arguing that plaintiffs had not established that the conditions precedent to defendants' obligation to pay under the contract had occurred; the contract ended by its express terms after three years; SII suffered no damages because it dissolved in 2009 before any alleged missed payments; Saba International, LLC, was not a party to the contract so it could not seek recovery; and Gharbieh was not personally liable under the contract. Specifically, with regard to the conditions precedent of the contract, defendants argued that plaintiffs failed to show "(1) that Yemeni TV is still broadcasting through Globecast or has been broadcasting after 2015; or (2) that Globecast received payments from Yemeni TV after 2015."

After holding a hearing on the motion, the trial court granted summary disposition to defendants. In relevant part, the trial court reasoned that "there's no genuine issue of material fact that [plaintiffs] don't have any evidence that there was any further contract connection, payments or amounts owed from Yemeni TV to the defendant[s]," and "there's no genuine issue of material fact that the Yemeni TV stopped paying the defendant[s]."

This appeal followed.

## II. SUMMARY DISPOSITION

Plaintiffs argue that the trial court erred by granting summary disposition in favor of defendants because there are genuine issues of material fact. We disagree.

## A. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition, reviewing the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). Under MCR 2.116(C)(10), a trial court may grant summary disposition in favor of the moving party when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Id*. at 270-271 (quotation marks and citation omitted).

"Our review is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). The moving party "has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Id*. at 475 (citations omitted). If the movant meets this initial burden, "the burden shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial." *Id*.

Likewise, "[t]he construction and interpretation of a contract presents a question of law that is reviewed de novo." *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005).

## B. ANALYSIS

"The primary goal in interpreting contracts is to determine and enforce the parties' intent. To do so, this Court reads the agreement as a whole and attempts to apply the plain language of the contract itself." *Village of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 262; 911 NW2d 241 (2017) (quotation marks and citation omitted). "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). A "contract is ambiguous when its provisions are capable of conflicting interpretations." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003) (quotation marks and citation omitted). "Accordingly, if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Id*.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich v Mich*, 497 Mich 197, 235; 866 NW2d 782 (2015).

"A condition precedent is a fact or event that the parties intend must take place before there is a right to performance under the contract." *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 483 n 7; 997 NW2d 307 (2022) (quotation marks and citation omitted). "If the condition

is not satisfied, there is no cause of action for a failure to perform the contract." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131; 743 NW2d 585 (2007).

In this case, DMC agreed to pay SII $2,000 per month, "as long as the Yemeni TV channel contract is enforced and payments by the Yemeni television channel are received by GlobeCast accordinglyand [sic] hence forwarded to [DMC]." DMC was not required to make payments to SII "before receiving quarterly payments from Yemen Television and before funds are forwarded to [DMC] by GlobeCast." The contractual agreement specifically stated that DMC was required to pay the commission fee "as long as the Yemeni TV channel contract is not violated and completely enforced and payments by the Yemeni television channel are received accordingly." Thus, under the contract, DMC did not have to pay SII before Yemeni TV sent its quarterly payments to GlobeCast, and then GlobeCast sent payments to DMC. If these conditions precedent were not satisfied, then SII did not have the right to receive payment from DMC, and it has no cause of action for a failure to perform the contract. *Id*.

The parties disagree whether the conditions precedent to DMC's obligation to pay were satisfied. Defendants assert that Yemeni TV stopped providing services and payment to GlobeCast in 2014 because of the civil war in Yemen that disrupted the government. According to the record before us, the most recent amendment to the agreement between GlobeCast and Global Connections, which was acting on behalf of Yemeni TV, was set to last until March 31, 2015. Defendants claim that DMC last received money from GlobeCast in 2014 and supported this claim with Gharbieh's deposition testimony to that effect. Defendants, as the moving parties, therefore satisfied their initial burden of supporting their position with deposition testimony and documentary evidence. *Innovative Adult Foster Care, Inc*, 285 Mich App at 475.

Plaintiffs contend that there is a genuine issue of fact as to whether the conditions precedent to defendants' obligation to pay were satisfied. Plaintiffs agree that the civil war in Yemen occurred. However, Alsadah believed that the Yemeni TV channel still was broadcasting, and he thought that Yemeni TV would not broadcast with a company other than GlobeCast. Alsadah admitted that he did not know whether Yemeni TV still was under contract with GlobeCast. Plaintiffs reasoned that Alsadah received several payments from Gharbieh after 2015, so GlobeCast must still have been broadcasting the channel because Gharbieh would not have made any payments to him if GlobeCast was not still broadcasting it. Alsadah believed that GlobeCast still was broadcasting the channel because Gharbieh did not tell him otherwise.

After defendants satisfied their initial burden to support their position with evidence, the burden shifted to plaintiffs to establish the existence of a genuine issue of material fact for trial. *Id*. Plaintiffs' only support for their position was Alsadah's belief that GlobeCast still was under contract with Yemeni TV. However, Alsadah admitted that he had no personal knowledge that Yemeni TV still was under contract with GlobeCast, much less whether payments still had been received by GlobeCast after the civil war in 2014. "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). Alsadah's receipt of several payments after 2014 was not evidence that GlobeCast still was under contract with Yemeni TV or that DMC was receiving funds from GlobeCast. Alsadah's speculation that GlobeCast's relationship with Yemeni TV was ongoing was insufficient to establish a genuine issue of material fact on this question. *Id*.

-4-

Accordingly, there was no genuine issue of material fact as to whether the conditions precedent to the contract were satisfied.[1] Plaintiffs have not demonstrated that they had the right to receive payment under the contractual agreement between the parties because they did not establish that, after 2014, Yemeni TV continued to send payments to GlobeCast or that GlobeCast continued to send payments to DMC.[2]

## III. CONCLUSION

The trial court correctly granted summary disposition in favor of defendants because plaintiffs did not establish a genuine issue of material fact regarding whether the conditions precedent to DMC's obligation to pay commission fees were satisfied. Therefore, we affirm.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young

---

[1] In their reply brief, plaintiffs argue that there is a genuine issue of material fact regarding this question because Gharbieh, in his deposition, "gave contradicting evidence about when service stopped, stating that there was no more service after 2014, that he would not have made payments if he himself was not receiving payments, and admitting he made payments through 2021." According to plaintiffs, "Gharbieh's contradictory testimony . . . creates a credibility issue . . . ."

We disagree. Although plaintiffs did not identify the specific portions of his deposition at issue, which would have aided our review, having nonetheless considered his deposition testimony, we find no significant contradictions. Gharbieh testified that he remitted payments to plaintiffs after 2006 despite the fact that the parties' contractual agreement presumably ended after that year because "there's an ethical thing" to maintain; that he continued remitting payments to plaintiffs for a period of time shortly before 2021 because he was threatened with litigation by Alsadah around that time; and that the final payment in January 2021 was the result of a clerical error. None of these statements are contradictory. Further, while we acknowledge that Gharbieh stated in an affidavit that "[t]he payments that DMC made to Defendants [sic] from 2018 through 2020 were made as the result of clerical errors," we do not believe that this discrepancy establishes a genuine issue of material fact as to whether Yemeni TV had a contractual relationship with, and remitted money to, GlobeCast after 2014, or that such money was then remitted to DMC.

[2] In light of this conclusion, all of the remaining arguments on appeal are either moot or waived for failure to preserve, and we decline to address them further. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023); *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016).